722 So.2d 151 (1998)
Brandon Cullen BRADY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00151 COA.
Court of Appeals of Mississippi.
September 15, 1998.
*152 James L. Davis III, Gulfport, for Appellant.
Michael C. Moore, Attorney General, Pat Flynn, Special Asst. Atty. Gen., for Appellee.
Before BRIDGES, C.J., and COLEMAN and HERRING, JJ.
HERRING, Judge, for the Court:
¶ 1. Brandon Cullen Brady appeals to this Court from his conviction of sexual battery and from a judgment issued by the Circuit Court of Harrison County, Mississippi, which denied his motion for a judgment notwithstanding the verdict or alternatively for a new trial. The appellant was originally indicted on one count of burglary of a dwelling and one count of sexual battery. The trial court, at the conclusion of the State's case, granted the defendant's motion for a directed verdict on Count I of the indictment (burglary) and then denied his motion for a directed verdict on Count II (sexual battery). Although the trial court offered to allow the State, at its option, to continue to prosecute Brady under Count I on the lesser-included offense of trespassing, the State declined. Thereafter the Appellant was convicted, after a two-day trial, of sexual battery and was sentenced to twelve years in the custody of the Mississippi Department of Corrections. We affirm.

A. THE FACTS
¶ 2. During the early morning hours of November 11, 1995, nine-year-old SF[1] was at home asleep on the living room sofa where she had fallen asleep watching television the night before. The room was illuminated by the kitchen light and the flickering light from the television set. The sofa on which SF was sleeping was located in front of the kitchen so that the light from the kitchen came over the back of the sofa and illuminated the living room. SF testified that she was awakened by the sound of tape being torn from a spool by Brandon Cullen Brady, who placed the tape over her mouth. SF stated that she was wearing only a shirt and underpants and "he sat at the end of the couch and pulled up my underwear, and then he licked my private, and then I made sounds, and he said I will kill you unless you shut up." On cross examination, SF was asked about what her *153 assailant did to her. The record reflects that SF then responded:
Q. And I hate to ask you, but do you recall if this individual kissed you inside your private area?
A. Just one I think.
The Court: Just what?
A. One.
Q. He mostly kissed you on your private, not in your private?
A. No, Sir.
¶ 3. When SF made sounds, moans and groans, he told her "I will kill you unless you shut up." Nevertheless the sounds that SF made awoke her sixteen-year-old sister, Laura, who came into the living room. Upon seeing a man on top of her little sister, Laura turned and ran to get help. The assailant then fled through the sliding glass door which led outside, fell on the steps, and disappeared into the darkness. Law enforcement officers were summoned, and upon their arrival both SF and Laura identified the appellant as SF's assailant. They both knew Brady, who was a neighbor that lived down the street from their home. SF testified that she could see Brady because the light from the kitchen and the television set fully illuminated his face. She stated that she was also able to observe her assailant during the assault.
¶ 4. Patricia Brady picked up her son, Brandon Brady, from work at approximately 5:00 p.m. on Friday November 10, 1995. They went to a local bank, cashed Brandon's paycheck, and then returned to the Brady home where Patricia Brady began to prepare supper. Soon after arriving at home, Brandon informed his mother that he was going for a walk. He left the residence without eating supper and headed to Mallini's, a local bar, to drink. At trial, Brady testified that he spent approximately $120 at Mallini's on November 10, 1995, consuming Wild Turkey shots with beer chasers. Patricia Brady testified that Brandon returned home after the 10:00 p.m. news programs on television. Both she and Brandon testified that when he returned home, she loudly scolded him because he was drunk. Thereafter, they watched television programs together for about one-half hour and they both went to bed.
¶ 5. Sleeping arrangements were crowded at the Brady house because Mike Brady (Brandon's father), Patricia Brady (Brandon's mother), Brandon's niece, his grandmother, and Brandon himself lived in the Brady family's three-bedroom house. Brandon Brady usually slept on the sofa in the living room. His grandmother normally slept in the first bedroom and his niece normally slept in the bedroom next to his parent's bedroom. On November 10, 1995, however, Brandon's father fell asleep on the sofa where Brandon usually slept, and Brandon's niece was spending the night at SF's home with SF's sister, Laura. When Patricia Brady retired to her bedroom, she told her son to sleep in his niece's bedroom because Michael Brady was still asleep on the sofa where Brandon normally slept.
¶ 6. Patricia Brady testified that she is a light sleeper and that she was awakened twice during the evening. The first time she awoke, she rose to find her son standing in the middle of his niece's bedroom. He informed her that he had just gone to the bathroom. She was awakened on the second occasion by the police officers knocking at the front door of her home. She testified that she was certain that her mother (Brandon Brady's grandmother) had not arisen during the night. She testified that when the police officers arrived, she woke her husband, who had arisen during the night and come to bed, to answer the door. It is noteworthy that Patricia Brady testified that she did not remember her husband coming to bed, and both Mike and Patricia Brady testified that Mike Brady was in his own bed with his wife and not on the sofa when the police officers arrived.
¶ 7. Laura, SF's older sister, testified that she was awakened at her home before dawn on November 11, 1995, by the sound of someone crying. She got up and went into the living room, where she saw a man on top of her sister. She then turned and ran to wake up her older sister. The assailant heard her and fled from the house. Laura testified that at first she did not recognize Brandon Brady as SF's assailant because she did not *154 see his face. However she did recognize his build and the moles on his back, because she had spent time around him. She also testified that she and her mother heard the assailant fleeing through the woods next to their house.
¶ 8. Mike Brady testified that when he arrived home on Friday evening, he ate dinner and sat down on the sofa to watch television. He ultimately fell asleep and did not recall the loud discussion between his wife and his son over the latter's drunken state. Mr. Brady further testified that he awoke during the night and then retired to his own bedroom. He was awakened the next morning by his wife to answer the door when the police arrived.
¶ 9. Officer Pickle, of the Pass Christian Police Department, testified that after he received the call for assistance, he proceeded to the victim's home. SF described her assailant to Officer Pickle as a white male, thirty years old, who was wearing blue jeans and who was not wearing a shirt. He was also described as having a mustache and a beard. SF stated that her assailant was Brandon Brady. Laura also identified Brandon Brady as SF's assailant. Officer Pickle then went to the Brady residence and Michael Brady answered the door. Officer Pickle asked to speak with Brandon Brady and when he appeared, the Appellant, a white male, was wearing blue jeans with no shirt, and he had a beard (goatee) and mustache. At that time, Officer Pickle noticed that Brandon Brady had cuts on his feet and arms and an abrasion on one shoulder. According to Officer Pickle, these wounds appeared to him to be bleeding. Furthermore, the blue jeans worn by the Appellant appeared to be wet. At trial, Officer Pickle identified State's Exhibits 2 through 6 as photographs which he had taken of Brandon Brady on the date and at the time of his arrest and identified those wounds which he contended were bleeding. He also identified the tape which had been used to cover the mouth of SF during the attack, which was in substantially the same condition as when it was recovered from the SF's home. No fingerprint analysis was conducted because no fingerprints were recovered from the front door of SF's home due to weather conditions.
¶ 10. On December 5, 1996 a jury convicted Brandon Brady of sexual battery. As stated, he was sentenced to twelve years in the custody of the Mississippi Department of Corrections.

B. THE ISSUES
¶ 11. Brady presents us with the following issues to consider, which are taken verbatim from his brief.

I. WHETHER THE LOWER COURT ERRED IN NOT DIRECTING A VERDICT OF NOT GUILTY AT THE CLOSE OF THE STATE'S CASE FOR THE SEXUAL BATTERY CHARGE WHICH WAS RENEWED AT THE CLOSE OF THE ENTIRE CASE BY PEREMPTORY JURY INSTRUCTION D-2.

II. WHETHER THE EVIDENCE AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT A CONVICTION.

III. WHETHER THE VERDICT AT TRIAL WAS CONTRARY TO THE EVIDENCE OR STRONGLY AGAINST THE WEIGHT OF THE EVIDENCE.

IV. WHETHER THE LOWER COURT ALLOWED INAPPROPRIATE STATE JURY INSTRUCTIONS.

V. WHETHER THE LOWER COURT ERRED IN NOT DECLARING A MISTRIAL.

VI. WHETHER THE LOWER COURT ERRED IN NOT ALLOWING AN UNLAWFUL TOUCHING INSTRUCTION.

C. ANALYSIS
¶ 12. Assignments of error "I" and "II" address the sufficiency of the evidence presented at trial by the State. Assignment of error "III" addresses the weight of the evidence presented and whether the State sufficiently proved its case. In assignment of error "IV", the Appellant asserts that the State's Instructions, S-2, S-3, and S-5 should not have been granted by the trial court. These four assignments of error are related and will be discussed together.
*155 ¶ 13. The Appellant's argument on the first four assignments of error that the State should have been required to prove sexual penetration during the course of the assault but did not do so and was not required to do so by the trial court. We disagree.
¶ 14. As stated, SF was nine years old at the time she was assaulted. The charge of sexual battery upon a child under the age of fourteen years is addressed by Miss.Code Ann. § 97-3-95(1)(c) (Rev.1994) which states:
§ 97-3-95 Sexual battery.
(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
...
(c) A child under the age of fourteen (14) years.
Associated with Section 97-3-95(1)(c) is Section 97-3-97 of the Mississippi Code. This section is entitled "Sexual Battery; definitions" and states, in pertinent part, as follows:
§ 97-3-97. Sexual battery; definitions.
For the purposes of Section 97-3-95 through 97-3-103 the following words shall have the meaning ascribed herein unless the context otherwise requires;
(a) "Sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, and penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.
(emphasis added). The legislature has statutorily defined penetration with regard to Code Sections 97-3-95 through 97-3-103. If a sexual act is found on the roster of acts mentioned in Section 97-3-97(a), then that act by its very definition is penetration. "Cunnilingus" is found on that roster and therefore is considered to be penetration for the purpose of determining whether or not a sexual battery occurred. Johnson v. State, 626 So.2d 631, 633 (citing Roberson v. State, 501 So.2d 398, 400 (Miss.1987)).
¶ 15. Cunnilingus is defined by the Mississippi Supreme Court in Johnson v. State, 626 So.2d 631 (Miss.1993) as follows:
In its true sense, "cunnilingus" means stimulation by tongue or lips of any part of a woman's genitalia and does not require actual penetration. State v. Ludlum, 303 N.C. 666, 672, 281 S.E.2d 159, 162 (1981). Under our present sexual battery statutes, however, union or contact between a person's mouth and the genital opening of a woman is the equivalent of "sexual penetration." Cf. Cantrell v. State, 507 So.2d 325, 329 (Miss.1987) (citations omitted) (emphasis added).
Id. at 633. Continuing, the Johnson court held:
This court holds, therefore, that proof of contact, skin to skin, between a person's mouth, lips, or tongue and the genital opening of a woman's body, whether by kissing, licking or sucking is sufficient proof of "sexual penetration" through the act of "cunnilingus" within the meaning and purview of § 97-3-97(a) (Supp.1993).
Id. Thus, with regard to sexual battery, penetration occurs through the act of cunnilingus, between the victim and her assailant. SF unequivocably testified that such an act occurred in this case.

I. SUFFICIENCY OF THE EVIDENCE
¶ 16. Our supreme court in Collier v. State, 711 So.2d 458, 461 (Miss.1998) has stated:
Our best statement of the standard of review for the sufficiency of the evidence is as follows:
Our concern here is whether the evidence in the record is sufficient to sustain a finding adverse to Wetz on each element of the offense of murder. In the present context we must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved *156 by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss.1987) (citations omitted). If the evidence is found to be legally insufficient, the discharge of the defendant is proper. May v. State, 460 So.2d 778, 781 (Miss.1984).
When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond the Court's authority to disturb. Taylor v. State, 672 So.2d 1246, 1255 (Miss.1996); McFee v. State, 511 So.2d 130, 133-34 (Miss.1987).
¶ 17. The jury was instructed regarding the necessary elements of sexual battery and the lesser included offense of simple assault. Additionally the jury was instructed on the defendant's theory of the events, including his contention that he was at home and asleep when the crime was committed and that the evidence presented was insufficient to sustain a guilty verdict.
¶ 18. The evidence presented in this case, if believed by the jury, was sufficient to support a conviction. The jurors were free to believe whomever they wished to believe. Thus, the allegation that the evidence was insufficient to support Brady's conviction is without merit.

II. WEIGHT OF THE EVIDENCE
¶ 19. The standard of review for the determination of whether a jury verdict is against the overwhelming weight of the evidence is as follows:
"In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Herring v. State, 691 So.2d 948, 957 (Miss.1997); Jackson v. State, 689 So.2d at 766. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Herring v. State, 691 So.2d at 957; Benson v. State, 551 So.2d 188, 192 (Miss.1989) (citing McFee v. State, 511 So.2d 130, 133-134 (Miss.1987). Pleasant v. State, 701 So.2d 799, 802 (Miss.1997)). As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper. May, 460 So.2d at 781-82.
Collier v. State, 711 So.2d 458, 461 (Miss. 1998). When reviewing a challenge to the weight of the evidence, this Court must determine whether the trial judge abused his discretion in denying a new trial. Id. at 461 (citing May v. State, 460 So.2d 778, 781-82 (Miss.1984)). Accepting as true all evidence favorable to the State, an appellate court will determine, on review, whether "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Taylor v. State, 672 So.2d 1246, 1256 (Miss. 1996) (citing Wetz v. State, 503 So.2d 803, 812-13 (Miss.1987)). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Wetz, 503 So.2d at 808. Finally, "this court may not pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." Davis v. State, 568 So.2d 277, 281 (Miss.1990) (citing Campbell v. State, 278 So.2d 420, 423 (Miss.1973)).
¶ 20. Having in mind the facts presented to the jury as summarized above, we cannot say that the jury's verdict was so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We find that the trial court correctly denied Brady's motion for a new trial.

III. JURY INSTRUCTIONS
¶ 21. The Appellant objects to State's Instructions S-2, S-3, and S-5, which were approved by the trial court and read and *157 given to the jury. Instruction S-2 states in pertinent part:
If you find from the evidence in this case beyond a reasonable doubt that:
1. on or about November 11, 1995, in the First Judicial District of Harrison County, Mississippi,
2. the defendant, Brandon Cullen Brady, did wilfully and unlawfully engage in sexual penetration with SF, a child under the age of fourteen (14) years, by performing cunnilingus upon the said SF by skin to skin contact of his mouth, lips or tongue on the genital opening of said SF, whether by kissing, licking or sucking,
then you shall find the Defendant, Brandon Cullen Brady, Guilty of Count II, Sexual Battery.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant Not Guilty of Count II, Sexual Battery.
State's Instruction S-3 states:
The Court instructs the jury that sexual penetration includes the act of cunnilingus.
State's Instruction S-5 states:
The Court instructs the jury that proof of contact, skin to skin, between a person's mouth, lips or tongue and the genital opening of a woman's body, whether by kissing, licking, or sucking, is proof of sexual penetration through the act of cunnilingus.
¶ 22. The trial court rejected Brady's proposed Instructions D-7 and D-7(a) by stating that the subject matter of the two instructions were adequately covered by Instructions S-2 and S-3.
¶ 23. When reviewing challenges to jury instructions, whether granted or denied by the trial court, this Court utilizes the standard articulated in Heidel v. State, 587 So.2d 835 (Miss.1991). The court stated:
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Id. at 842 (citations omitted). Further, "[a] trial court is not required to give instructions which are covered by other instructions although the language may differ." Id. at 842 (citing Davis v. State, 431 So.2d 468, 475 (Miss.1983)).
¶ 24. We rule that State's Instructions S-2, S-3, and S-5 which offend the Appellant are accurate representations of the law. The trial court did not abuse its discretion in granting those instructions or in refusing to grant the defendant's proposed Instructions D-7 and D-7-A, the content of which were adequately covered in the State's instructions. This issue has no merit.

IV. DID THE TRIAL COURT ERR IN NOT DECLARING A MISTRIAL?
¶ 25. Brady contends that the trial court should have granted a mistrial when the prosecutor asked Brady's father if he thought his son was guilty. According to the record, the following transpired while the prosecutor was cross-examining the Appellant's father, Michael Brady:
Q. Now, didn't you tell Mr. and Mrs. Farris that you were convinced that your son had done this?
Mr. Davis: Objection, judge, to this line of questioning.
Court: Sustained. Y'all approach the bench.
¶ 26. After a brief bench conference, the trial court removed the jury from the courtroom and proceeded to hold a hearing on Brady's objection on the basis that the proposed evidence was not relevant on the issue of Brady's guilt or innocence. After the jury left the courtroom, Brady moved for a mistrial. The court sustained the defendant's objection to the prosecution's question but denied the motion for a mistrial. When the jury returned the Court stated:
The objection to the last question is sustained. The jury is instructed to disregard the question. Proceed, Miss Forster.
*158 ¶ 27. The decision of whether to declare a mistrial is within the sound discretion of the trial judge. Brent v. State, 632 So.2d 936, 941 (Miss.1994); Horne v. State, 487 So.2d 213, 214 (Miss.1986); Logsdon v. State, 183 Miss. 168, 170, 183 So. 503, 503 (1938); see Arizona v. Washington, 434 U.S. 497, 512, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); Grandberry v. Bonner, 653 F.2d 1010 (5th Cir.1981). Uniform Rule of Circuit and County Court Practice 3.12 states:
Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.
Upon motion of a party or its own motion, the court may declare a mistrial if:
1. The trial cannot proceed in conformity with law;
2. It appears there is no reasonable probability of the jury's agreement upon a verdict.
Moreover, to find error from a trial judge's failure to declare a mistrial, there must have been an abuse of discretion. Brent v. State, 632 So.2d 936, 941 (Miss.1994) (citing Jones v. State, 398 So.2d 1312, 1318 (Miss.1981) (citations omitted)).
¶ 28. Logsdon v. State, 183 Miss. 168, 183 So. 503 (1938) is on point with the present case. In Logsdon, the appellant's wife, testifying on his behalf, was asked:
"How many times has this defendant been convicted of crime"? This question was objected to by counsel for the appellant who stated that it is "highly improper and prejudicial to the rights of the defendant, and we ask that the jury be discharged and a mistrial entered", to which the trial judge replied, "The objection is sustained, and you gentlement (sic) of the jury will not consider the question, forget it."
Id. at 170, 183 So. 503. On appeal, our supreme court stated that "[t]he question was not answered by the witness. The question should not have been asked, but when the court sustained the objection thereto and directed the jury not to consider it, no error was committed in refusing the appellant's request for a mistrial." Id. at 170,183 So. at 503.
¶ 29. The Logsdon court, in affirming the trial judge's decision not to grant a mistrial, stated:
Ordinarily, error in the asking of an improper question is cured by not permitting it to be answered. Whether such an error is incurable and a mistrial therefor, if requested, should be granted rests in the sound discretion of the trial court, and we do not think this discretion was here abused. On the contrary, we concur in the ruling made.
Id.
¶ 30. In the case sub judice, the trial court followed well established procedures and went to lengths to insure that the defendant would not be prejudiced by the prosecutor's question. Thus, we cannot say that the trial court abused its discretion when it denied the defendant's motion for a mistrial. This assignment of error has no merit.

V. DID THE TRIAL COURT ERR IN NOT ALLOWING AN UNLAWFUL TOUCHING INSTRUCTION?
¶ 31. Brady contends on this issue that the trial court erred when it failed to grant proposed jury instruction D-6 which states:
UNLAWFUL TOUCHING OF A CHILD UNDER THE AGE OF 14 FOR LUSTFUL PURPOSES
If you find for the evidence in this case beyond a reasonable doubt, that:
1. BRANDON CULLEN BRADY on or about November 11, 1995 in the First Judicial District of Harrison County, Mississippi,
2. was above the age of eighteen (18) years, and
3. handled, touched or rubbed with his hands or any part of his body or member thereof, and
4. SF was a child under the age of fourteen (14) years, and
5. such touching was for the purpose of gratifying his lust or indulging in his depraved *159 licentious desires, then you can find the Defendant, BRANDON CULLEN BRADY GUILTY of touching a child under the age of fourteen (14) years for lustful purposes with reference to Count II of the Indictment.
If the State has failed to prove any one or more of these essential elements beyond a reasonable doubt on the charge of -TOUCHING A CHILD UNDER THE AGE OF 14 YEARS FOR LUSTFUL PURPOSES-, then you shall find the Defendant, NOT GUILTY of TOUCHING A CHILD UNDER THE AGE OF 14 YEARS FOR LUSTFUL PURPOSES-.
If you find the State has failed to prove any one or more of these essential elements of the crimes of -SEXUAL BATTERY- or -TOUCHING OF A CHILD UNDER THE AGE OF 14 YEARS FOR LUSTFUL PURPOSES-, then you shall find the Defendant NOT GUILTY of -SEXUAL BATTERY -orTOUCHING A CHILD UNDER THE AGE OF 14 YEARS FOR LUSTFUL PURPOSES.
In his brief Brady states: "Any juror could have found the element of penetration missing. Clearly the unlawful touching is a lesser related offense." Brady asserts that by not allowing his proposed instruction on the crime of fondling or unlawful touching, the court prejudicially deprived him an instruction on one of his theories of his case and therefore denied him a fair trial.[2]
¶ 32. Count II of the indictment under which the appellant was charged states in pertinent part as follows:
That: BRANDON CULLEN BRADY in the First Judicial District of Harrison County, Mississippi, on or about November 11, 1995, did willfully, purposefully, unlawfully and feloniously commit Sexual Battery upon SF, a child who was at the time in question under the age of 14 years, by engaging in the act of sexual penetration, to-wit: by performing cunnilingus upon the said SF.
The "fondling or unlawful touching" statute, Miss.Code Ann. § 97-5-23(1) (Supp.1997) (effective July 1, 1995), states:
Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands, or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, or a mentally defective, mentally incapacitated or physically helpless person as defined in Section 97-3-97, shall be guilty of a felony and upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less that two (2) years not more that fifteen (15) years, or be punished by both fine and imprisonment, at the discretion of the court. (emphasis added).
Thus, the elements of fondling or unlawful touching are:
1) a handling or touching or rubbing with any part of the assailant's body or any member thereof,
2) of a child under the age of 14 years
3) by a person above the age of 18 years
4) for the purposes of gratifying the lust or indulging licentious sexual desires of the assailant.
As stated in the statute, the penalty for conviction under Section 95-5-23 is a fine of not less than $1,000 to $5,000 or commitment to the Mississippi Department of Corrections for not less than two years, nor more that fifteen years, or both.
¶ 33. By comparison, Section 97-3-101 provides the penalty for conviction of the crime of sexual battery and provides that "Every person who shall be convicted of sexual battery shall be imprisoned in the State Penitentiary for a period of not more than 30 years;...." The elements of sexual battery *160 as defined in Section 97-3-95 as related to the appellant in his indictment are:
1. sexual penetration of
2. a child under the age of fourteen years.
¶ 34. The issue before the Court on this assignment of error is whether the trial court should have granted Brady's proposed instruction which would have allowed the jury to find Brady guilty of fondling instead of the more serious charge of sexual battery. In Perry v. State, 637 So.2d 871, 876 (Miss. 1994), the Mississippi Supreme Court stated "[o]ur law in Mississippi is well settled that jury instructions are not given unless there is an evidentiary basis in the record for such. Such instructions `must be warranted by the evidence.' Furthermore, they should not be indiscriminately granted."
¶ 35. In Sanders v. State, 479 So.2d 1097, 1108 (Miss.1985), our supreme court has set out the test for determining whether one offense is a lesser-included offense of another, and stated:
while the authority to convict [for] a lesser included offense began as a weapon of the prosecution, it has become a defense tool as well. Whether applied for the benefit of the state or defense, in order to authorize such instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser included offense. Also, there must be some evidence to support the lesser included offense.
See Ross v. State, 603 So.2d 857, 866 (Miss. 1992). Thus, fondling may be a lesser included offense of sexual battery only if all of the elements of sexual battery also include all of the elements of fondling, and only if it is impossible to commit sexual battery without at the same time committing fondling. In comparing the elements of the sexual battery statute and the fondling statute the distinctions between the two offenses stand out. Each offense has elements which are unique to that offense and exclusive to the other.
¶ 36. Fondling requires a handling or rubbing of a child under the age of fourteen years by a person above the age of eighteen. Additionally, fondling requires a finding that the offending act was performed for the purpose of gratifying the lust or indulging licentious sexual desires of the person committing the crime. Sexual battery only requires sexual penetration of a child under the age of fourteen. No specific intent is required, and there is no age requirement for the assailant with sexual battery. Because the elements of each offense are different, it is possible to commit the greater offense without committing the lesser. By examining the requirements of these two statutes, it is apparent that fondling is not a lesser-included offense of sexual battery. See Hailey v. State, 537 So.2d 411, 414 (Miss.1988) (approving the above statute comparison analysis and finding that fondling is not a lesser included offense of forcible rape); see also Hopkins v. State, 639 So.2d 1247, 1256 (Miss.1993). Therefore, because fondling is not a lesser-included offense to sexual battery no lesserincluded offense instruction can be given. Murrell v. State, 655 So.2d 881, 886 (Miss. 1995) (citing Griffin v. State, 533 So.2d 444, 447 (Miss.1988); see Perry v. State, 637 So.2d 871, 876 (Miss.1994); Fairchild v. State, 459 So.2d 793, 800 (Miss.1984) (stating that without an evidentiary basis a jury instruction may not be given)).
¶ 37. Similarly, a lesser-offense instruction should not be granted unless there is an evidentiary basis for that instruction in the record. Gangl v. State, 539 So.2d 132, 136 (Miss.1989); Harper v. State, 478 So.2d 1017, 1021 (Miss.1985); Lee v. State, 469 So.2d 1225, 1230 (Miss.1985).
¶ 38. In Gangl v. State, 539 So.2d 132, 136-37 (Miss.1989) the Mississippi Supreme Court stated that the evidentiary standards for granting a lesser-offense instruction and a lesser-included offense instruction are the same. That court stated:
The better rule in cases such as this is that the defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment. See Griffin v. State, 533 So.2d 444, 447-48 (Miss.1988).

*161 Of course, lesser offense instructions should not be granted indiscriminately, and only where there is an evidentiary basis in the record. (citations omitted). The evidentiary standard is the same as for lesser included offense instructions, and is laid out in Harper v. State, supra, at 1021. Consequently, where as in the instant case, the evidence warrants it, the accused is entitled as a matter of right, upon proper request, to a lesser offense instruction the same as he would be entitled to a lesser included offense instruction. Griffin v. State, supra.
The concern here that the indictment on a charge of armed robbery will not support a conviction for accessory after the fact, that being a separate and distinct offense, is moot. By requesting the instruction, Gangl waives any inadequacy or notice in the indictment. See Griffin v. State, supra, at 448, note 2. Thus, the jury on retrial may convict him of accessory after the fact even though that crime is not a lesser included offense of the charge laid in the indictment, and the State may request that the instruction be reformed to so read. See Harper v. State, 478 So.2d at 1018.
Id. at 136-37. Thus, since a trial court may grant a lesser-offense instruction even if it is possible to commit the greater offense without committing the lesser, we must determine whether there was an evidentiary basis for the trial court to have granted a fondling instruction. The standard for determining whether an evidentiary basis exists for granting a lesser-included offense instruction or a lesser-related offense instruction was set out in Harper v. State, 478 So.2d 1017, 1021 (Miss.1985), which states:
Lesser included offense instruction should be granted unless the trial judge  and ultimately this court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one element of the principal charge.).
We have followed this view of when a lesser included offense instruction should be given in Lee v. State, 469 So.2d 1225, 1230-31 (Miss.1985); and Fairchild v. State, 459 So.2d 793, 801 (Miss.1984), see also Harbin v. State, 478 So.2d 796, 799 (Miss.1985). Today we reaffirm the approach taken in those cases.
See also Murrell v. State, 655 So.2d 881, 886 (Miss.1995).
¶ 39. We have reviewed the record, taking the evidence in a light most favorable to Brady, and have given all reasonable favorable inferences which may be drawn in favor of Brady. Our review of the record reveals that at all times Brandon Cullen Brady maintained that his identification as SF's assailant was a mistake. Brady testified and pled to the jury that he was not the man who assaulted SF on November 11, 1995. Further our examination of the record reveals no evidence introduced by the State or introduced by Brady which would indicate that Brady was guilty of anything other than sexual battery. Therefore on this record, there is no reasonable basis by which a jury could arbitrarily accept some parts of the victim's testimony and reject other parts, or whereby which the jury could arbitrarily decide that Brady's actions as described by the victim did not, in fact, constitute an act of cunnilingus. That being the case, there was no basis in the evidence to permit Brady the requested lesser offense instruction of child fondling.
¶ 40. Unless there is some conflict in the evidence that would reasonably allow an alternate interpretation of the facts consistent with a reasonable finding that the greater offense did not occur but the lesser offense did occur, the trial court is not obligated to give the instruction. Based upon the standard of giving all favorable inferences in the evidence to Brady, we find that he is not entitled to a fondling instruction. Therefore, this Court, having found no evidentiary basis for granting Brady's jury Instruction D-6, rules that the trial court committed no error when it refused to grant Brady's Instruction D-6 to the jury. This assignment of error has no merit.
*162 ¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
THOMAS, P.J., not participating.
NOTES
[1] The name of the victim will not be used in an attempt to prevent her from being further traumatized.
[2] It is noteworthy that the trial court did grant Brady an instruction on the lesser-included offense of simple assault.