615 So.2d 576 (1993)
Jimmy Lee HOPSON
v.
STATE of Mississippi.
No. 90-KA-1080.
Supreme Court of Mississippi.
March 11, 1993.
*577 David A. Stephenson, Meridian, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PITTMAN, Justice, for the Court:
Today we affirm the conviction of a drunken driver whose intoxicated condition contributed to the tragic death of a small child.
Jimmy Lee Hopson appeals from his conviction of culpably negligent manslaughter (vehicular homicide) entered in the Circuit Court of Kemper County following a trial by jury. Hopson was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections.
Hopson raises two issues dealing with (1) the sufficiency of the evidence and (2) the State's proof, or lack thereof, of the second element of the corpus delicti, criminal agency.

FACTS
On June 15, 1989, at approximately 8:00 p.m., Marcus Brown, a five year-old child and resident of the Tamola Road Community in Kemper County, was standing on the roadside clutching his bicycle when he was struck by an automobile driven by Jimmy Hopson. The road where the accident took place was a paved two lane farm market road, slightly curved in certain places but relatively straight where the impact occurred. Weather conditions were dry. Young Marcus was taken to Rush Hospital by Shirley McDonald, an eyewitness to the tragic accident, where he was examined by Dr. David Makey, an emergency room physician.
Two people, Willie Burton and Shirley McDonald, witnessed the incident on Tamola Road, either in whole or in part. Burton had driven to the home of his mother-in-law, and at 7:45 p.m. was sitting inside his automobile which was parked off the left side of the road in his mother-in-law's driveway.
Burton observed Marcus on the opposite side of the road coming down the hill riding his bicycle. At the same time and place, the defendant's automobile was approaching from Burton's rear headed south. Hopson's vehicle attracted Burton's attention because it was in the wrong lane of travel (the left lane), and it "almost came over and hit" Burton's parked automobile. After passing by Burton and narrowly missing Burton's vehicle, Hopson's car swerved suddenly and sharply to the right, darted across the road and struck Marcus who was standing next to his bicycle waiting for the defendant's car to pass.
The car that struck the child did not stop; rather, it continued down the road for approximately a mile and a half where it parked at the Tamola Grocery. A short time later, Burton observed Hopson walking back up the road toward the scene of the accident. The defendant, who smelled like he had been drinking and was not walking straight, said he thought he had struck a mailbox.
Shirley McDonald saw Hopson's automobile strike Marcus Brown, her nephew. She testified that shortly prior to 8:00 p.m. she was standing four or five feet from Willie Burton's parked automobile near the home of her mother-in-law. She observed Hopson's vehicle coming around a curve in the wrong lane of travel. After it nearly struck Burton's car, it continued for a short distance on the wrong side of the road, then got over in the other lane and ran off the pavement striking the child. According to McDonald, Marcus was far enough off the road "for a car not to be off *578 that far to hit him." McDonald took the unconscious child to the hospital where he died later that evening.
Roy Partridge administered an intoxilizer test to Hopson at 10:00 p.m. on June 15, 1989, approximately two hours after the accident. Hopson's blood alcohol content at that time was .24, nearly two and one-half times the legal limit.
Jimmy Hopson, a fifty-five (55) year old resident of Kemper County, testified in his own behalf. He offered no explanation for rounding the curve on the wrong side of the road and narrowly missing Burton's parked automobile, and he gave no reason for driving his vehicle off the pavement on the opposite side of the road and striking the child. Rather, Hopson's testimony consisted of a string of denials. Hopson testified: "I don't know what I [hit]. All I know is I heard a bump beside the door. I ain't saw Marcus Brown."

ISSUES

1. Sufficiency of Evidence
Hopson assails the legal sufficiency of the State's proof. Specifically, he claims the State's evidence was insufficient to establish his guilt of culpably negligent manslaughter defined in Miss. Code Ann. § 97-3-47 (1972). Hopson contends the evidence, at best, would only support a conviction for negligently causing the death of another while operating a motor vehicle under the influence of intoxicating liquor as defined by Miss. Code Ann. § 63-11-30(4) (1972).
The law applicable to culpably negligent manslaughter is found in Whitehurst v. State, 540 So.2d 1319 (Miss. 1989), a case involving a vehicular homicide. We said:
Whitehurst's motion for j.n.o.v. tests the legal sufficiency of all of the evidence to support a verdict of culpable negligence manslaughter. On appeal, this Court is required to:
accept as true all evidence favorable to the state, together with all reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond reasonable doubt, the trial court's denial of the motion must be affirmed.

Stever [v. State], 503 So.2d [227] at 230 [Miss. 1987].
In order to obtain a conviction under § 97-3-47 for vehicular manslaughter, "it must be proved beyond a reasonable doubt that the defendant was guilty of culpable negligence." Id. at 229. This requires proof that Whitehurst "was guilty of such gross negligence ... as to evince on his part a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness ..." Id. quoting Dickerson v. State, 441 So.2d 536 (Miss. 1983), and Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945).
More to the point, "while driving ... under the influence of intoxicating liquor is a crime in and of itself ... this in itself does not constitute culpable negligence, nor does it make what would otherwise be no more than a negligent act in operating a motor vehicle culpable negligence under the meaning of the statute." Craig v. State, 520 So.2d [487] at 492. It may, however, "be considered as an element constituting gross and careless disregard for the value of human life," and further, it may be a factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the defendant and to the resulting death. Gibson v. State, 503 So.2d [230] at 233.
Whitehurst, 540 So.2d at 1327-28. See also Evans v. State, 562 So.2d 91 (Miss. 1990).
A jury could have found from the testimony that the influence of intoxicants proximately contributed to the negligence of the defendant and to young Marcus Brown's death.
In Evans, we restated the principle that in order for driving under the influence of alcohol to be a factor in a case involving culpable negligence, "[i]t must create an abnormal mental and physical condition which tends to deprive one of the clearness *579 of intellect and control of himself which he would otherwise possess." Evans, 562 So.2d at 95 (quoting Frazier v. State, 289 So.2d 690, 692 (Miss. 1974)). The State's evidence passes muster under this test.
Taken in a light most favorable to the verdict, the State's proof, together with all reasonable inferences flowing therefrom, established that Hopson was operating his motor vehicle in a reckless manner immediately prior to striking the child. His automobile was traveling down the wrong side of the road when it barely missed striking Burton's parked car. A reasonable, hypothetical juror could have certainly concluded that Hopson's perception and his capacity for safely operating a motor vehicle were seriously impaired as a result of his intoxicated condition and that his intoxication proximately contributed both to his negligence and the death of Marcus Brown.
Hopson's argument that he can be guilty of nothing greater than negligently causing the death of another while operating a motor vehicle under the influence of intoxicants might have greater appeal if Hopson had given some reason for failing to negotiate a curve while traveling at a speed, according to Hopson, of only 20-25 mph and then driving off the right side of the road. The defendant's testimony, however, was saturated with denials. He denied that his vehicle was on the wrong side of the road, denied that he narrowly missed Burton's automobile, denied that his vehicle ever left the pavement at any time, and denied that a blood alcohol level of .24 was a product of anything other than two preaccident beers and some whiskey consumed after the accident.
There was no evidentiary reason for Hopson to drive off the left side of the road and then, within a thirty foot span of relatively straight paved highway, veer suddenly off to the right side and strike the child. The only reasonable conclusion is that Hopson's intoxication rendered him incapable of maintaining proper control of his automobile and of perceiving persons, places, and things around him. See Craig v. State, 520 So.2d 487, 492 (Miss. 1988); Gibson v. State, 503 So.2d 230, 233 (Miss. 1987); Gandy v. State, 373 So.2d 1042, 1045-46 (Miss. 1979).
We hold the State's proof, together with all favorable inferences flowing therefrom, was sufficient to establish the required causal connection between Hopson's intoxication and the death of Marcus Brown. The proof was legally sufficient to demonstrate that Hopson's conduct exhibited a wanton and reckless disregard for the safety of human life or such an indifference to the consequences of his acts under the surrounding circumstances as to render that conduct tantamount to willfulness.

2. Corpus Delicti
Hopson contends the State failed to prove the corpus delicti because it did not establish the child's death resulted from a criminal agency. The defendant laments: "[N]o one gave their opinion as [to] the cause of death."
"The corpus delicti in a homicide case consists of (1) the death of a human being, and (2) a criminal agency causing the death." Steele v. State, 544 So.2d 802, 807-08 (Miss. 1989). Neither an autopsy nor medical evidence is required to establish the corpus delicti. Miskelley v. State, 480 So.2d 1104 (Miss. 1985); McCraw v. State, 260 So.2d 457 (Miss. 1972); King v. State, 251 Miss. 161, 168 So.2d 637 (1964).
The second element of the corpus delicti may be proven by circumstantial evidence and by reasonable inferences to be drawn from the evidence. Elliott v. State, 183 So.2d 805, 810 (Miss. 1966). See also Goldman v. State, 406 So.2d 816, 820 (Miss. 1981). Criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis consistent with innocence. King v. State, 251 Miss. at 175-76, 168 So.2d at 643.
Jo Ann Brown, the child's mother, testified that Marcus had eaten dinner with the family at 7:30 that evening before going outside to play. Prior to the fatal incident, her son had never been to the doctor and was in "good health."
*580 Willie Burton testified he saw Hopson's car swerve toward the child and observed Marcus pulling his bicycle back. Burton then lost sight of the child and did not observe him again until he found young Marcus lying "in the dirt in the ditch."
Shirley McDonald saw Hopson's automobile strike the child. Prior to the incident she had seen Marcus standing on the roadside next to his bicycle. McDonald found the child lying on the ground and drove him to Rush Memorial Hospital. His eyes were closed, and McDonald thought the child was unconscious.
Dr. David Makey, an emergency room physician, testified that Marcus arrived "in critical condition ... unconscious ... [and] showing signs of internal hemorrhage." The doctor observed severe bruising of the right lung and a severe head injury which rendered the child "unconscious and not really responsive." While Dr. Makey was trying to determine the severity of the child's injuries, Marcus stopped breathing, went into cardiac arrest, and died. The child's injuries were consistent "with a force hitting him or him hitting a hard object."
We hold the testimony of the examining physician, when viewed in harmony with the testimony elicited from the two eyewitnesses observing the incident, either in whole or in part, overwhelmingly established that the cause of the child's death was blunt trauma received when he was struck by the Hopson's automobile.
CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.