# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00809-SCT

*JASPER JOINER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/4/2001 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID O. BELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   BILLY L. GORE |
| DISTRICT ATTORNEY: | JAMES M. HOOD, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/16/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     On December 3, 1999, a grand jury for Lafayette County, Mississippi, returned an indictment charging Jasper Joiner (Joiner) with operating a motor vehicle while under the influence of alcohol and negligently causing the death of Mary Callie Harwell (Harwell) in violation of Miss. Code Ann. § 63-11-30 (Rev. 1996).  After a trial, the jury returned a verdict of guilty.  Joiner was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections.  Joiner's motion for JNOV was denied, and he then appealed.

## FACTS

¶2.     At approximately 4:20 p.m. on October 7, 1999, the vehicle operated by Joiner struck the vehicle of Harwell, who was traveling south on Highway 7 in Lafayette County, Mississippi. All witnesses who saw the accident testified that Joiner did not stop at the stop sign prior to entering Highway 7, at a high rate of speed, resulting in the collision. The evidence reflects and Joiner admits that he was drinking and driving. Joiner's blood alcohol content was .18%. Joiner testified that he stopped before driving onto Highway 7.

¶3.     Harwell was transported to Baptist Hospital in Oxford, Mississippi, by ambulance and was pronounced dead upon her arrival. Dr. Thomas Fowlkes testified that he was on duty at the emergency room when paramedics brought in Harwell. Dr. Fowlkes was accepted by the trial court as an expert in the field of medicine. Dr. Fowlkes determined that Harwell died from massive head trauma. The triage report indicated three diagnoses: (1) traumatic cardiac arrest; (2) motor vehicle accident; and (3) multiple trauma. Dr. Fowlkes testified that in his opinion the victim's cardiac arrest was caused by the trauma. The testimony revealed that the massive head injuries caused stoppage of the heart and cessation of blood circulation.

¶4.     The jury returned a guilty verdict. Joiner argues that there was no showing that the collision was the cause of death. Joiner contends that "[w]hile it may be an unlikely coincidence, it is still entirely possible for the victim to [have died] of natural causes before the collision." Joiner contends that "[a]n autopsy presents more conclusive evidence and protects the right of the accused to demand proof of his guilt beyond a reasonable doubt." Joiner appeals to this Court raising the following issue:

> **Whether this Court should overrule its decision in** *Hopson v. State*, **615 So. 2d 576 (Miss. 1993).**

## DISCUSSION

¶5. Miss. Code Ann. § 63-11-30(1) (Rev. 1996), at the time this accident occurred, made it a crime "for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor ... [or] (c) has an alcohol concentration of ten one-hundredths percent (.10%) or more for persons who are above the legal age to purchase alcoholic beverages under state law. . . ." Furthermore, "[e]very person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another ... shall, upon conviction, be guilty of a felony...." Miss. Code Ann. § 63-11- 30(4) (Rev. 1996). Therefore, the State must prove that Joiner not only consumed alcohol prior to the accident, but that he performed a negligent act that caused the death of another. *Hedrick v. State*, 637 So.2d 834, 837-38 (Miss.1994). It has been made clear that § 63-11-30(5) "contains no requirement that the negligence has to be caused by the alcohol." *Ware v. State*, 790 So.2d 201, 216 (Miss. Ct. App. 2001).

¶6. The corpus delicti in a homicide case consists of (1) the death of a human being, and (2) a criminal agency. *Steele v. State*, 544 So. 2d 802, 807-08 (Miss. 1988). In the case sub judice, the death of Harwell is not in dispute. However, Joiner contends that the State did not prove the required criminal agency. Joiner argues that only an autopsy could determine the cause of death beyond a reasonable doubt.

¶7. This State has held for many years that "[n]either an autopsy nor medical evidence is required to establish the *corpus delicti." Hopson v. State*, 615 So. 2d 576, 579 (Miss. 1993)(citing *Miskelley v. State*, 480 So. 2d 1104 (Miss. 1985)); *McCraw v. State*, 260 So. 2d 457 (Miss. 1972); *King v. State*, 251 Miss. 161, 168 So. 2d 637 (1964). Joiner argues that an autopsy would have determined the cause of death beyond a reasonable doubt. Although Joiner provides no legal authority, he now asks this Court to overrule *Hopson* and all other long-standing cases of this State, and reverse his sentence because

3

there was no autopsy. It is well established that this Court will not review any issue where the party has failed to cite relevant authority. *Williams v. State*, 708 So. 2d 1358, 1360-61 (Miss. 1998)(citing *Hoops v. State*, 681 So.2d 521, 526 (Miss.1996)); *Kelly v. State*, 553 So.2d 517, 521 (Miss.1989).

Nevertheless, the summation of Joiner's argument contained in his brief is as follows:

> In *Hopson*, this Court held that neither autopsy nor medical evidence is required to establish *corpus delicti* in a homicide case. This Court held that criminal agency causing death may be proved by circumstantial evidence and by reasonable inferences to be drawn from evidence.

> While this ruling certainly meets the preponderance of the evidence standard, appellant argues that the reasonable doubt standard requires such proof. While it may be an unlikely coincidence, it is still entirely possible for the victim to die of natural causes before the collision. Here, there was a finding of cardiac arrest. Dr. Fowlkes stated his opinion that the arrest was a result of the collision. He may be more likely than not to be right---but that is not the standard. Reasonable doubt still exists. An autopsy presents more conclusive evidence and protects the right of the accused to demand proof of his guilt beyond a reasonable doubt.

We disagree with Joiner's contention.

¶8.     *Hopson* is just one of many long-standing cases holding that there is no need for an autopsy or medical evidence when proving corpus delicti. *Hopson*, 515 So.2d at 579. In *Hopson*, the defendant was driving his vehicle while heavily intoxicated, and veered off the paved road striking a five-year-old boy. One eyewitness saw all of the events transpire while another eyewitness only saw the events immediately before and after the child was struck. Hopson contended that the State failed to prove corpus delicti because it did not establish the child's death resulted from criminal agency. *Id*. The defendant stated "[N]o one gave their opinion as [to] the cause of death." This Court held that "the testimony of the examining physician, when viewed in harmony with the testimony elicited from the two eyewitnesses observing the incident, either in whole or in part, overwhelmingly established that the cause of the child's death was blunt trauma received when he was struck by the Hopson's automobile." *Id*. at 580.

4

¶9. "The state may prove the crime (corpus delicti) by circumstantial evidence, but where the case is based wholly on circumstantial evidence, the state must prove the defendant's guilt beyond a reasonable hypothesis consistent with innocence." *Steele v. State*, 544 So.2d at 808 (quoting *Hester v. State*, 463 So.2d 1087, 1093 (Miss.1985)); *Hemphill v. State*, 304 So.2d 654, 655 (Miss.1974) (quoting *Westbrook v. State*, 202 Miss. 426, 32 So.2d 251, 251 (1947)). The hypothesis Joiner asserts, that Harwell died of natural causes prior to the collision, is not reasonable. By his own admission, "it may be an *unlikely* coincidence." (emphasis added). Joiner further admits, that "[Dr. Fowlkes] may be more likely than not to be right." Whether Harwell died of natural causes or as a result of the collision was a question for the jury.

¶10. The overwhelming weight of the evidence shows Joiner had a blood alcohol level of .18%. Several eyewitnesses saw Joiner drive through a stop sign without stopping just an instant prior to colliding with Harwell's vehicle. Dr. Fowlkes, the emergency room physician who examined Harwell's body, determined that she died of traumatic cardiac arrest caused by the trauma received in the collision. We know that Harwell was driving her vehicle. For Joiner to assert that an autopsy is necessary because, regardless of the likelihood, Harwell may have died of natural causes just seconds before he negligently ran a stop sign while intoxicated is not a reasonable hypothesis consistent with innocence.

## CONCLUSION

¶11. Joiner has not established a compelling rationale or provided legal authority to persuade this Court to overrule *Hopson*, and the numerous cases that preceded it. Accordingly, the judgment of the trial court is affirmed.

¶12. **CONVICTION OF AGGRAVATED DUI AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR.**