45 So.3d 1193 (2009)
Gregory Wayne HUDSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2008-KA-00387-COA.
Court of Appeals of Mississippi.
December 8, 2009.
Rehearing Denied June 8, 2010.
Certiorari Granted August 12, 2010.
Certiorari Dismissed as Improvidently Granted October 12, 2010.
William C. Stennett, attorney for appellant.
*1194 Office of the Attorney General, by Stephanie Breland Wood, attorney for appellee.
EN BANC.
KING, C.J., for the Court.
¶ 1. Gregory Wayne Hudson was convicted in the Circuit Court of Itawamba County of culpable-negligence manslaughter. Hudson was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with six years suspended and five years of post-release supervision, and ordered to pay a fine in the amount of $2,000 and to pay restitution in the amount of $7,265.
¶ 2. Aggrieved, Hudson appeals his conviction and sentence, raising four issues on appeal:
I. Whether the trial court erred by granting the State's jury instructions P1 and P2;
II. Whether the trial court erred by denying Hudson's proffered jury instructions D1, D2, D3, and D4;
III. Whether the trial court erred by denying Hudson's motion for a directed verdict and motion for a new trial; and
IV. Whether the verdict is against the overwhelming weight of the evidence.
Finding that the trial court erred by denying Hudson's defense-theory jury instruction D3, we reverse and remand this case for a new trial consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
¶ 3. On the morning of November 19, 2005, Hudson was driving south on Alice Hill Road in Itawamba County, Mississippi. At the same time, Zelma Holcomb was driving north on Alice Hill Road. While attempting to navigate a curve in the road, Hudson's and Holcomb's automobiles collided, and Holcomb died as a result of the accident.
¶ 4. Officer Steve Thrasher of the Itawamba County Sheriff's Department was dispatched to the scene of the accident. Officer Thrasher questioned Hudson regarding the accident, and Officer Thrasher testified that Hudson was "delirious." In furtherance of his investigation, Officer Thrasher asked Hudson to submit to a drug and alcohol test, and Hudson gave his consent. Hudson's blood sample and urine sample were obtained, and Officer Thrasher delivered those samples to the state crime lab for analyzing. No alcohol was found in Hudson's blood sample. However, a drug analysis showed that Hudson had 0.36 micrograms of barbiturates in his bloodstream. Amphetamine, methamphetamine, and barbiturates were found in Hudson's urine sample.
¶ 5. On August 2, 2006, Hudson was indicted for culpable-negligence manslaughter in violation of Mississippi Code Annotated section 97-3-47 (Rev.2000). During the trial, two witnesses, a husband and wife, testified that Hudson was driving fast and that he was driving on the wrong side of the road. Conversely, Hudson testified that Holcomb veered into his lane of travel and that she caused the accident. The accident reconstructionist testified that Alice Hill Road was a narrow road that had no lane markings. However, based on the skid marks left on the road, the accident reconstructionist's ultimate conclusion was that Hudson was driving too fast for the conditions of the road and that Hudson was driving on the wrong side of the road.
¶ 6. On January 24, 2008, an Itawamba County jury found Hudson guilty of culpable-negligence manslaughter. Hudson was sentenced to twenty years in the custody of the MDOC, with six years suspended and five years of post-release supervision. *1195 Hudson was also ordered to pay a $2,000 fine and to pay restitution in the amount of $7,265. Following his conviction and sentence, Hudson filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion. Aggrieved, Hudson timely filed his notice of appeal.

ANALYSIS

I. Jury Instructions P1 and P2

II. Jury Instructions D1, D2, D3, and D4
¶ 7. Hudson argues that the trial court erred by granting the State's jury instructions P1 and P2, and the trial court erred by denying four of his proffered jury instructions. When considering a challenge to a jury instruction on appeal, this Court does not review the jury instruction in isolation. Morgan v. State, 995 So.2d 812, 816(¶ 12) (Miss.Ct.App.2008). Instead, the Court reviews the jury instructions given as a whole. Id. If the jury instructions given fairly announce the law and create no injustice, this Court will not find any reversible error. Id. Accordingly, we will discuss Hudson's first two assignments of error together.

A. Jury Instructions P1 and D1
¶ 8. Hudson was indicted for culpable-negligence manslaughter under section 97-3-47, which provides that:
Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.
Miss.Code Ann. § 97-3-47 (Rev.2006). The supreme court has defined culpable negligence as follows:
The term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.
Conley v. State, 790 So.2d 773, 793(¶ 70) (Miss.2001) (quoting Grinnell v. State, 230 So.2d 555, 558 (Miss.1970)).
¶ 9. The State submitted jury instruction P1, and the trial court gave the jury instruction despite Hudson's objection. Jury instruction P1 charged the jury, in pertinent part, that:
if you believe from the evidence in this case beyond a reasonable doubt that the defendant ... did unlawfully and feloniously kill and slay Zelma Holcomb, a human being, by culpable negligence by driving his vehicle on the wrong side of a public roadway at an excessive rate of speed, after having ingested barbiturates, amphetamine, and methamphetamine, and causing a collision with the vehicle occupied by Zelma Holcomb, then you shall find the defendant, Gregory Wayne Hudson, guilty of culpable[-]negligence manslaughter.
(Emphasis added). Hudson's proffered jury instruction D1 was similar to jury instruction P1. However, in D1, Hudson did not list the facts that the State relied upon to show culpable negligencespeeding, driving on the wrong side of the road, and the ingestion of drugs. The trial court denied D1, finding that it was a cumulative instruction.
¶ 10. Hudson has not provided this Court with any authority that supports his contention that it was improper for the trial court to include the drugs in the jury instruction. See Latiker v. State, 918 So.2d 68, 76(¶ 19) (Miss.2005) (finding that "[a] party's failure to provide authority for *1196 its claims on appeal relieves this Court from having to consider the issue)." Therefore, this issue is procedurally barred. Notwithstanding the procedural bar, we find that D1 was properly denied as a cumulative instruction. See Montana v. State, 822 So.2d 954, 961(¶ 26) (Miss. 2002) (finding that "[t]he refusal to grant an instruction which is similar to one already given does not constitute reversible error)."

B. Jury Instruction P2
¶ 11. Jury instruction P2 simply defined culpable negligence. A review of the record shows that Hudson failed to raise a contemporaneous objection to jury instruction P2. "The failure to make a contemporaneous objection to a jury instruction waives this issue for the purposes of appeal." Martin v. State, 872 So.2d 713, 723(¶ 40) (Miss.Ct.App.2004). Thus, this issue is procedurally barred from review.

C. Jury Instruction D2
¶ 12. In defense jury instruction D2, Hudson attempted to explain the difference between simple negligence and culpable negligence for the jury. The trial court denied the instruction, stating that culpable negligence was adequately defined in jury instructions P1 and P2. After reviewing the jury instructions given as a whole, we find that the jury instructions given adequately defined culpable negligence. See, e.g., Robinson v. State, 571 So.2d 275, 277 (Miss.1990) (finding that the trial court did not err by refusing the defendant's proffered jury instruction that compared civil negligence to criminal culpable negligence). Thus, we find that the trial court did not err by denying defense jury instruction D2.

D. Jury Instruction D3 and D4
¶ 13. Part of Hudson's defense was that he was not under the influence of drugs at the time of the accident. The supreme court has held that a defendant has a fundamental right to have proper jury instructions given that present his theory of the case. Spires v. State, 10 So.3d 477, 483 (¶¶ 27-28) (Miss.2009). The trial court may refuse to give a jury instruction "which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Id. at (¶ 28) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).
¶ 14. The State's forensic toxicologist testified regarding Hudson's drug and alcohol test results. The toxicologist testified that the level of barbiturates, which are found in sleeping pills or sedatives, found in Hudson's blood was a "subtherapeutic low"[1] amount. Despite the low amount reported, the toxicologist stated that it may have an effect on an average person. In regard to the drugs found in Hudson's urine sample, the toxicologist testified that those results did not show influence or impairment; the results only showed that Hudson had consumed those drugs at some point prior to the accident. During the trial, Hudson admitted that he had smoked "meth" three weeks prior to the accident, but he denied taking any drugs on the day of the accident.
¶ 15. Hudson submitted jury instructions D3 and D4, which embodied his theory of the defense. D3 provided that:
The Court instructs the jury that the operation of a motor vehicle while under the influence of intoxicants may be a *1197 factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the Defendant and to the resulting death. The influence of intoxicants must have created an abnormal mental and physical condition in the Defendant which deprived said Defendant of the clearness of intellect and control of himself in which he would otherwise possess. If you as a jury cannot find these conditions then you cannot and must not consider in your deliberations the State's allegations that the Defendant operated his vehicle after having ingested barbiturates, amphetamine, and methamphetamine.
D4 provided that:
The Court instructs the jury that you cannot consider in your deliberations in this case the State's allegations that the Defendant operated his vehicle after having ingested barbiturates, amphetamine, and methamphetamine.
The trial court denied D3, stating that:
This is not a DUI case[:] this is culpable negligence. I don't even know that drugs are required. I think speed alone if it shocks the conscience and rises to willful or wanton [sic] by itself without alcohol or drugs could give rise to culpable[-]negligence manslaughter. The fact that he additionally allegedly [sic] was using drugs at the time only adds to that.
The trial court also denied instruction D4, finding that it was peremptory in nature.
¶ 16. The law is clear that "while driving ... under the influence ... is a crime in and of itself ... this in itself does not constitute culpable negligence[.]" Hopson v. State, 615 So.2d 576, 578 (Miss. 1993) (quoting Craig v. State, 520 So.2d 487, 492 (Miss.1988)). In Hopson, the supreme court further held that:
[Driving under the influence] may, however, be considered as an element constituting gross and careless disregard for the value of human life, and further, it may be a factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the defendant and to the resulting death.
. . . .
... in order for driving under the influence of alcohol to be a factor in a case involving culpable negligence, it must create an abnormal mental and physical condition which tends to deprive one of the clearness of intellect and control of himself which he would otherwise possess.
Id. at 578-79 (internal citations and quotations omitted).
¶ 17. The Court notes that this statement of the law specifically refers to driving under the influence of alcohol. However, there is nothing that would suggest that this rule does not also apply to other substances that may cause impairment. The Court also notes that the jury had other evidence to consider against Hudson besides the results of his drug test, such as his alleged speeding and his alleged driving on the wrong side of a road with no lane markings. Although the trial court specifically stated that the information regarding the drugs was not required to constitute culpable negligence, by including the drugs in jury instruction P1, the trial court specifically instructed the jury to consider Hudson's ingestion of the drugs as a factor indicating culpable negligence.
¶ 18. The indictment in this case charges that:
Gregory Wayne Hudson ... did wilfully, unlawfully and feloniously kill and slay Zelma Holcomb, a human being, by culpable negligence, in that Gregory Wayne *1198 Hudson did wilfully, unlawfully and feloniously drive his vehicle on the wrong side of a public roadway at an excessive rate of speed, after having ingested barbiturates, amphetamine and methamphetamine, and causing a collision with the vehicle occupied by Zelma Holcomb, in such a wanton and grossly negligent manner as to evidence reckless disregard for the value of human life, and as a result of such grossly negligent action caused the death of the said Zelma Holcomb...."
(Emphasis added).
¶ 19. While the State in its indictment does not unequivocally allege that Hudson was under the influence of drugs, it does allege a cause and effect relationship between the enumerated items, including the ingestion of drugs and the death of Holcomb. That allegation of a cause and effect relationship is repeated in the prosecution's instruction P1, which reads that:
The defendant, Gregory Wayne Hudson, has been charged by Indictment with the felony crime of Culpable[-]Negligence Manslaughter. The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant ... did unlawfully and feloniously kill and slay Zelma Holcomb, a human being, by culpable negligence by driving his vehicle on the wrong side of a public roadway at an excessive rate of speed, after having ingested barbiturates, amphetamine, and methamphetamine, and causing a collision with the vehicle occupied by Zelma Holcomb, then you shall find the defendant, Gregory Wayne Hudson, guilty of Culpable[-]Negligence Manslaughter.
¶ 20. Where the State is allowed to allege the existence of a cause and effect relationship, the defendant has an equal right to question the existence of that cause and effect relationship. The State's forensic toxicologist testified that the drugs found in Hudson's urine did not indicate that he was under the influence. Also, she testified that the amount of barbiturates found in his blood stream was a low amount. In light of the foregoing, we find that there was a foundation in the evidence for Hudson's defense jury instruction D3.
¶ 21. However, the Court takes issue with the last sentence of D3, which is also embodied in instruction D4. In the two instructions, Hudson essentially argues that the jury should not be able to consider the evidence. However, the record reflects that the results of Hudson's drug and alcohol test were properly submitted to the jury. Thus, the jury may consider this evidence in making its decision. D4 was properly denied, and the last sentence of instruction D3 was properly denied. However, we find that the trial court erred by denying D3 in its entirety.
¶ 22. "[T]he law of this State is quite clear that the trial court may not refuse to instruct the jury on a properly raised defense strictly because the requested information is not properly drafted. Rather, it is the duty of the court in that situation to amend the instruction to conform to the applicable law." Cleveland v. State, 801 So.2d 812, 815(¶ 6) (Miss.Ct.App.2001) (citing Hester v. State, 602 So.2d 869, 872 (Miss.1992)). On remand, if the trial court intends to specifically instruct the jury to consider the drug test results as it did in jury instruction P1, Hudson is entitled to a jury instruction that embodies his theory of the defense. Any language that suggests that the jury cannot consider this evidence in its deliberations should not be included in the instruction.
¶ 23. This case is reversed and remanded for a new trial consistent with this opinion. Because the Court's resolution of this issue is dispositive, we decline to address *1199 Hudson's remaining assignments of error.

CONCLUSION
¶ 24. We find that the trial court did not err by granting jury instructions P1 and P2. We also find that the trial court did not err by denying jury instructions D1, D2, and D4. However, we find that the trial court erred by denying defense jury instruction D3 in its entirety. Thus, we reverse the judgment of the trial court and remand this case for a new trial to be held before a properly instructed jury.
¶ 25. THE JUDGMENT OF THE ITAWAMBA COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITAWAMBA COUNTY.
IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ.
CARLTON, J., dissenting.
¶ 26. The indicted acts of the Gregory Wayne Hudson reflect a spirit of wanton and reckless disregard for the safety of others. Therefore, I respectfully dissent and would affirm the jury verdict. I disagree with the majority's finding that the jury was not properly instructed. The majority finds that the trial judge erred in failing to instruct the jury as to a portion of a defense-requested instruction requiring the jury to consider the defendant's use of drugs prior to the accident only if the jury found the defendant to be under the influence at the time of the collision. I respectfully submit that the trial judge properly denied the defendant's requested instruction as to "being under the influence" since the indictment contains no such allegation or requirement of proof.
¶ 27. Hudson was not indicted for being under the influence of an intoxicating substance; therefore, an instruction that allowed the jury to find such a fact constitutes an improper amendment of the indictment. See Edwards v. State, 737 So.2d 275, 293(¶ 28) (Miss.1999) (amending the substance of an indictment through jury instructions is reversible error). The indictment charged Hudson with committing culpable-negligence manslaughter by exhibiting a wanton disregard of, or utter indifference to, the safety of human life. Hudson was not indicted for being under the influence of intoxicants or drugs. Therefore, the trial judge would have been in error if he had required the jury to find an act distinct from the acts charged in the indictment before considering the evidence of Hudson's ingestion of controlled substances in conjunction with the other charged acts of speeding, driving on the wrong side of a public road, and causing a collision.
¶ 28. Rule 404(b) of the Mississippi Rules of Evidence excludes evidence of other "crimes, wrongs, or acts" to prove that a defendant acted in conformity with the crime charged. Offenses or acts that are an interrelated series of events fall outside the proscription of Rule 404(b), even if not contained in the indictment. Jackson v. State, 689 So.2d 760, 768 (Miss. 1997) (finding that other wrongs during an episode resulting in the defendant's arrest were probative and admissible). In contrast, the indictment herein charged Hudson with an interrelated series of events, and the trial judge properly allowed into evidence proof of this course of conduct. I respectfully submit that our jurisprudence supports the admission of evidence reflecting on Hudson's degree of culpability with *1200 respect to his negligence and reckless disregard for the safety of others. The evidence of Hudson's speeding on the wrong side of a public roadway after having ingested barbiturates, amphetamine, and methamphetamine, considered in toto, with all the indicted acts, combine to reflect a spirit of disregard for the safety of others on the roadway. See Cutshall v. State, 203 Miss. 553, 561, 35 So.2d 318, 321 (1948) (finding the defendant's entire conduct, prior to and subsequent to the collision, admissible, as evidence of "a spirit of a wanton disregard for the safety of others"). The majority opinion conditions the relevancy of the ingestion upon a showing of influence. However, such a requirement of proof is beyond the indictment.
¶ 29. In this case, I respectfully submit that Hudson's knowing act of ingesting controlled substances, without proof of the unindicted requirement of his being "under the influence" of the substances, considered with the other indicted acts of speeding on the wrong side of a public road, reflected an overall spirit of Hudson's wanton disregard for the safety of others.
¶ 30. Evidence of other crimes or wrongs is admissible when so clearly interrelated to the crime charged as to form a single transaction or closely-related series of transactions. Mackbee v. State, 575 So.2d 16, 27 (Miss.1990). Here, the indictment charged Hudson with interrelated acts. In this case, the ingestion of the controlled substances is charged in the indictment; hence, the evidence of Hudson's ingestion of the substances was properly admitted. The majority opinion fails to acknowledge the probative value of the ingestion or the propriety of charging the ingestion as part of the indictment unless the jury first finds that the defendant was under the influence of the intoxicating substances. However, the ingestion of the substances, as charged in the indictment, reflects a spirit of wanton disregard for the safety of others, and a showing of "under the influence" is not a separate element of the crime charged.
¶ 31. Because I find no error in the trial court's denial of jury instruction D-3, I would affirm the judgment of the trial court.
LEE AND MYERS, P.JJ., JOIN THIS OPINION.
NOTES
[1] The toxicologist testified that there must be at least 0.20 micrograms of barbiturates in the bloodstream to be reported. Hudson had 0.36 micrograms of barbiturates in his bloodstream, which the toxicologist explained was less than the effective range for sedation.