KING, C.J.,
for the Court.
¶ 1. Gregory Wayne Hudson was convicted in the Circuit Court of Itawamba County of culpable-negligence manslaughter. Hudson was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with six years suspended and five years of post-release supervision, and ordered to pay a fine in the amount of $2,000 and to pay restitution in the amount of $7,265.
¶ 2. Aggrieved, Hudson appeals his conviction and sentence, raising four issues on appeal:
I. Whether the trial court erred by granting the State’s jury instructions PI and P2;
II. Whether the trial court erred by denying Hudson’s proffered jury instructions Dl, D2, D3, and D4;
III. Whether the trial court erred by denying Hudson’s motion for a directed verdict and motion for a new trial; and
IV. Whether the verdict is against the overwhelming weight of the evidence.
Finding that the trial court erred by denying Hudson’s defense-theory jury instruction D3, we reverse and remand this case for a new trial consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 3. On the morning of November 19, 2005, Hudson was driving south on Alice Hill Road in Itawamba County, Mississippi. At the same time, Zelma Holcomb was driving north on Alice Hill Road. While attempting to navigate a curve in the road, Hudson’s and Holcomb’s automobiles collided, and Holcomb died as a result of the accident.
¶4. Officer Steve Thrasher of the Ita-wamba County Sheriffs Department was dispatched to the scene of the accident. Officer Thrasher questioned Hudson regarding the accident, and Officer Thrasher testified that Hudson was “delirious.” In furtherance of his investigation, Officer Thrasher asked Hudson to submit to a drug and alcohol test, and Hudson gave his consent. Hudson’s blood sample and urine sample were obtained, and Officer Thrasher delivered those samples to the state crime lab for analyzing. No alcohol was found in Hudson’s blood sample. However, a drug analysis showed that Hudson had 0.36 micrograms of barbiturates in his bloodstream. Amphetamine, methamphetamine, and barbiturates were found in Hudson’s urine sample.
¶5. On August 2, 2006, Hudson was indicted for culpable-negligence manslaughter in violation of Mississippi Code Annotated section 97-3-47 (Rev.2000). During the trial, two witnesses, a husband and wife, testified that Hudson was driving fast and that he was driving on the wrong side of the road. Conversely, Hudson testified that Holcomb veered into his lane of travel and that she caused the accident. The accident reconstructionist testified that Alice Hill Road was a narrow road that had no lane markings. However, based on the skid marks left on the road, the accident reconstructionist’s ultimate conclusion was that Hudson was driving too fast for the conditions of the road and that Hudson was driving on the wrong side of the road.
¶ 6. On January 24, 2008, an Itawamba County jury found Hudson guilty of culpable-negligence manslaughter. Hudson was sentenced to twenty years in the custody of the MDOC, with six years suspended and five years of post-release supervision. *1195 Hudson was also ordered to pay a $2,000 fíne and to pay restitution in the amount of $7,265. Following his conviction and sentence, Hudson filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion. Aggrieved, Hudson timely filed his notice of appeal.
ANALYSIS
I. Jury Instructions PI and P2
II. Jury Instructions Dl, D2, D3, and D4
¶ 7. Hudson argues that the trial court erred by granting the State’s jury instructions PI and P2, and the trial court erred by denying four of his proffered jury instructions. When considering a challenge to a jury instruction on appeal, this Court does not review the jury instruction in isolation. Morgan v. State, 995 So.2d 812, 816(¶12) (Miss.Ct.App.2008). Instead, the Court reviews the jury instructions given as a whole. Id. If the jury instructions given fairly announce the law and create no injustice, this Court will not find any reversible error. Id. Accordingly, we will discuss Hudson’s first two assignments of error together.
A. Jury Instructions PI and Dl
¶ 8. Hudson was indicted for culpable-negligence manslaughter under section 97-3^7, which provides that:
Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.
Miss.Code Ann. § 97-3-47 (Rev.2006). The supreme court has defined culpable negligence as follows:
The term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.
Conley v. State, 790 So.2d 773, 793(¶ 70) (Miss.2001) (quoting Grinnell v. State, 230 So.2d 555, 558 (Miss.1970)).
¶ 9. The State submitted jury instruction PI, and the trial court gave the jury instruction despite Hudson’s objection. Jury instruction PI charged the jury, in pertinent part, that:
if you believe from the evidence in this case beyond a reasonable doubt that the defendant ... did unlawfully and felo-niously kill and slay Zelma Holcomb, a human being, by culpable negligence by driving his vehicle on the wrong side of a public roadway at an excessive rate of speed, after having ingested barbiturates, amphetamine, and methamphetamine, and causing a collision with the vehicle occupied by Zelma Holcomb, then you shall find the defendant, Gregory Wayne Hudson, guilty of culpable[-]negligence manslaughter.
(Emphasis added). Hudson’s proffered jury instruction Dl was similar to jury instruction PI. However, in Dl, Hudson did not list the facts that the State relied upon to show culpable negligence — speeding, driving on the wrong side of the road, and the ingestion of drugs. The trial court denied Dl, finding that it was a cumulative instruction.
¶ 10. Hudson has not provided this Court with any authority that supports his contention that it was improper for the trial court to include the drugs in the jury instruction. See Latiker v. State, 918 So.2d 68, 76(¶ 19) (Miss.2005) (finding that “[a] party’s failure to provide authority for *1196 its claims on appeal relieves this Court from having to consider the issue).” Therefore, this issue is procedurally barred. Notwithstanding the procedural bar, we find that D1 was properly denied as a cumulative instruction. See Montana v. State, 822 So.2d 954, 961(¶ 26) (Miss.2002) (finding that “[t]he refusal to grant an instruction which is similar to one already given does not constitute reversible error).”
B. Jury Instruction P2
¶ 11. Jury instruction P2 simply defined culpable negligence. A review of the record shows that Hudson failed to raise a contemporaneous objection to jury instruction P2. “The failure to make a contemporaneous objection to a jury instruction waives this issue for the purposes of appeal.” Martin v. State, 872 So.2d 713, 723(¶ 40) (Miss.Ct.App.2004). Thus, this issue is procedurally barred from review.
C. Jury Instruction D2
¶ 12. In defense jury instruction D2, Hudson attempted to explain the difference between simple negligence and culpable negligence for the jury. The trial court denied the instruction, stating that culpable negligence was adequately defined in jury instructions PI and P2. After reviewing the jury instructions given as a whole, we find that the jury instructions given adequately defined culpable negligence. See, e.g., Robinson v. State, 571 So.2d 275, 277 (Miss.1990) (finding that the trial court did not err by refusing the defendant’s proffered jury instruction that compared civil negligence to criminal culpable negligence). Thus, we find that the trial court did not err by denying defense jury instruction D2.
D.Jury Instruction D3 and D4
¶ 13. Part of Hudson’s defense was that he was not under the influence of drugs at the time of the accident. The supreme court has held that a defendant has a fundamental right to have proper jury instructions given that present his theory of the case. Spires v. State, 10 So.3d 477, 483 (¶¶ 27-28) (Miss.2009). The trial court may refuse to give a jury instruction “which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id. at (¶ 28) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).
¶ 14. The State’s forensic toxicologist testified regarding Hudson’s drug and alcohol test results. The toxicologist testified that the level of barbiturates, which are found in sleeping pills or sedatives, found in Hudson’s blood was a “subthera-peutic low”[1] amount. Despite the low amount reported, the toxicologist stated that it may have an effect on an average person. In regard to the drugs found in Hudson’s urine sample, the toxicologist testified that those results did not show influence or impairment; the results only showed that Hudson had consumed those drugs at some point prior to the accident. During the trial, Hudson admitted that he had smoked “meth” three weeks prior to the accident, but he denied taking any drugs on the day of the accident.
¶ 15. Hudson submitted jury instructions D3 and D4, which embodied his theory of the defense. D3 provided that:
The Court instructs the jury that the operation of a motor vehicle while under the influence of intoxicants may be a *1197 factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the Defendant and to the resulting death. The influence of intoxicants must have created an abnormal mental and physical condition in the Defendant which deprived said Defendant of the clearness of intellect and control of himself in which he would otherwise possess. If you as a jury cannot find these conditions then you cannot and must not consider in your deliberations the State’s allegations that the Defendant operated his vehicle after having ingested barbiturates, amphetamine, and methamphetamine.
D4 provided that:
The Court instructs the jury that you cannot consider in your deliberations in this case the State’s allegations that the Defendant operated his vehicle after having ingested barbiturates, amphetamine, and methamphetamine.
The trial court denied D3, stating that:
This is not a DUI case[:] this is culpable negligence. I don’t even know that drugs are required. I think speed alone if it shocks the conscience and rises to willful or wanton [sic] by itself without alcohol or drugs could give rise to culpable[-]negligence manslaughter. The fact that he additionally allegedly [sic] was using drugs at the time only adds to that.
The trial court also denied instruction D4, finding that it was peremptory in nature.
¶ 16. The law is clear that “while driving ... under the influence ... is a crime in and of itself ... this in itself does not constitute culpable negligence[.]” Hopson v. State, 615 So.2d 576, 578 (Miss.1993) (quoting Craig v. State, 520 So.2d 487, 492 (Miss.1988)). In Hopson, the supreme court further held that:
[Driving under the influence] may, however, be considered as an element constituting gross and careless disregard for the value of human life, and further, it may be a factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the defendant and to the resulting death.
[[Image here]]
... in order for driving under the influence of alcohol to be a factor in a case involving culpable negligence, it must create an abnormal mental and physical condition which tends to deprive one of the clearness of intellect and control of himself which he would otherwise possess.
Id. at 578-79 (internal citations and quotations omitted).
¶ 17. The Court notes that this statement of the law specifically refers to driving under the influence of alcohol. However, there is nothing that would suggest that this rule does not also apply to other substances that may cause impairment. The Court also notes that the jury had other evidence to consider against Hudson besides the results of his drug test, such as his alleged speeding and his alleged driving on the wrong side of a road with no lane markings. Although the trial court specifically stated that the information regarding the drugs was not required to constitute culpable negligence, by including the drugs in jury instruction PI, the trial court specifically instructed the jury to consider Hudson’s ingestion of the drugs as a factor indicating culpable negligence.
¶ 18. The indictment in this case charges that:
Gregory Wayne Hudson ... did wilfully, unlawfully and feloniously kill and slay Zelma Holcomb, a human being, by culpable negligence, in that Gregory Wayne *1198 Hudson did wilfully, unlawfully and felo-niously drive his vehicle on the wrong side of a public roadway at an excessive rate of speed, after having ingested barbiturates, amphetamine and methamphetamine, and causing a collision with the vehicle occupied by Zelma Holcomb, in such a wanton and grossly negligent manner as to evidence reckless disregard for the value of human life, and as a result of such grossly negligent action caused the death of the said Zelma Holcomb .... ”
(Emphasis added).
¶ 19. While the State in its indictment does not unequivocally allege that Hudson was under the influence of drugs, it does allege a cause and effect relationship between the enumerated items, including the ingestion of drugs and the death of Holcomb. That allegation of a cause and effect relationship is repeated in the prosecution’s instruction PI, which reads that:
The defendant, Gregory Wayne Hudson, has been charged by Indictment with the felony crime of Culpable[-]Negligence Manslaughter. The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant ... did unlawfully and feloniously kill and slay Zelma Holcomb, a human being, by culpable negligence by driving his vehicle on the wrong side of a public roadway at an excessive rate of speed, after having ingested barbiturates, amphetamine, and methamphetamine, and causing a collision with the vehicle occupied by Zelma Holcomb, then you shall find the defendant, Gregory Wayne Hudson, guilty of Culpable[-]Negligence Manslaughter.
¶ 20. Where the State is allowed to allege the existence of a cause and effect relationship, the defendant has an equal right to question the existence of that cause and effect relationship. The State’s forensic toxicologist testified that the drugs found in Hudson’s urine did not indicate that he was under the influence. Also, she testified that the amount of barbiturates found in his blood stream was a low amount. In light of the foregoing, we find that there was a foundation in the evidence for Hudson’s defense jury instruction D3.
¶21. However, the Court takes issue with the last sentence of D3, which is also embodied in instruction D4-. In the two instructions, Hudson essentially argues that the jury should not be able to consider the evidence. However, the record reflects that the results of Hudson’s drug and alcohol test were properly submitted to the jury. Thus, the jury may consider this evidence in making its decision. D4 was properly denied, and the last sentence of instruction D3 was properly denied. However, we find that the trial court erred by denying D3 in its entirety.
¶22. “[T]he law of this State is quite clear that the trial court may not refuse to instruct the jury on a properly raised defense strictly because the requested information is not properly drafted. Rather, it is the duty of the court in that situation to amend the instruction to conform to the applicable law.” Cleveland v. State, 801 So.2d 812, 815(¶ 6) (Miss.Ct.App.2001) (citing Hester v. State, 602 So.2d 869, 872 (Miss.1992)). On remand, if the trial court intends to specifically instruct the jury to consider the drug test results as it did in jury instruction PI, Hudson is entitled to a jury instruction that embodies his theory of the defense. Any language that suggests that the jury cannot consider this evidence in its deliberations should not be included in the instruction.
¶ 23. This case is reversed and remanded for a new trial consistent with this opinion. Because the Court’s resolution of this issue is dispositive, we decline to ad *1199 dress Hudson’s remaining assignments of error.
CONCLUSION
¶24. We find that the trial court did not err by granting jury instructions PI and P2. We also find that the trial court did not err by denying jury instructions DI, D2, and D4. However, we find that the trial court erred by denying defense jury instruction D3 in its entirety. Thus, we reverse the judgment of the trial court and remand this case for a new trial to be held before a properly instructed jury.
¶ 25. THE JUDGMENT OF THE ITAWAMBA COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITA-WAMBA COUNTY.
IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ.

. The toxicologist testified that there must be at least 0.20 micrograms of barbiturates in the bloodstream to be reported. Hudson had 0.36 micrograms of barbiturates in his bloodstream, which the toxicologist explained was less than the effective range for sedation.