MAXWELL, J., for the Court:
¶ 1. Dominic Gebben drove his vehicle around a stopped school bus and ran over five-year-old Nathan Key, killing the young child. The school bus’s red warning lights were activated and its stop sign extended when Gebben fatally struck Nathan, who had just exited the bus and was crossing the street. Gebben fled the scene and hid his vehicle in some nearby woods. A jury in the Jones County Circuit Court found Gebben guilty of culpable-negligence manslaughter and fleeing the scene of an accident. On appeal, Gebben raises several errors primarily challenging the circuit court’s refusal to transfer venue to another county and its rulings concerning jury instructions, both given and refused. Finding no reversible error, we affirm.
FACTS
¶ 2. On December 11, 2009, five-year-old Nathan and his two older siblings, Tessa (nine) and Lewis (eleven), rode the school bus home from North Jones Elementary School. Gebben, driving eastbound in a maroon Nissan Pathfinder, followed directly behind the bus on a two-laned road in Jones County. At the first stop on the route, Gebben came to a complete stop behind the bus. The bus driver activated the bus’s red warning fights and extended its stop sign. After several children had exited, the school bus, with its yellow warning fights activated, eased forward a short distance (no more than thirty yards) to its next stop — the Key residence. When the bus stopped across from the Keys’ driveway, Gebben’s Pathfinder again came to a complete stop behind the bus. The bus driver allowed one driver in the westbound lane to pass. The bus driver again activated the bus’s red fights and extended its stop sign before opening the door for the three Key children to exit.
¶ 3. Leading the trio, Lewis exited the school bus and walked in front of the bus, safely crossing the street. But as Nathan attempted to cross next, Gebben swung his Pathfinder onto the wrong side of the road to go around the bus. His Pathfinder struck Nathan, knocking him backward. Rather than stop, Gebben ran the SUV over Nathan, then immediately fled.
¶ 4. Nathan’s mother, Lori Key, was several cars behind her children’s bus. She watched Gebben’s Pathfinder drive around the bus. She then saw two of her children kneeling at the edge of the road and realized something had happened. After getting out of her vehicle, Lori’s “first observation [was] a little pair of black boots, and then I knew it was Nathan.” Lori ran to her young son, who was critically injured, lying on the edge of the road near her mailbox.
¶ 5. Tony Shaw — who was two cars back from Gebben — pursued the SUV to attempt to record its license plate number. Gebben sped toward an intersection and turned right on Hoy Road. Shaw continued pursuit. Gebben pulled into a driveway, then backed out and reversed course. As he headed toward Shaw, Shaw honked and pointed his finger at Gebben to stop. Geb-ben “looked him straight in the face then gunned it again,” heading back to the intersection. Shaw eventually caught up to Gebben, who turned onto a dead-end road, then drove through a field and into the woods. Gebben abandoned the Pathfinder in the woods approximately 300 yards from the paved road. Shaw parked his vehicle and waited for law enforcement to arrive.
¶ 6. Responding to Shaw’s directions, Jones County Sheriff’s Deputy Jerry Hutcheson discovered Gebben running from the woods toward a trailer. Deputy Hutcheson commanded Gebben to come toward him, and Gebben complied. According to Deputy Hutcheson, as Gebben *961 walked up to him, Gebben was “saying my brakes went out, I couldn’t stop, how’s the kid.” And he “kept rambling on about [how] he couldn’t stop and all.” Officer Hutcheson advised Gebben of his Miranda rights and arrested him. Gebben then told Officer Hutcheson he had “left to go get some cigarettes and his brakes [were] out.” Gebben claimed “he knew it before he started” and that “he shouldn’t have even [driven] the vehicle.” Gebben added that “he should have just hit the bus instead of going around it.”
¶ 7. Investigator Robby Súber later interviewed Gebben at the Jones County Sheriffs Office. A video of this interview was admitted into evidence. After again waiving his Miranda rights, Gebben initially maintained that faulty brakes had caused him to go around the school bus. He admitted coming to a complete stop behind the bus at the first stop, but claimed he was unable to stop behind the bus a short distance away at its second stop. Gebben claimed because of an issue with the brake line, he had to “down shift” or “gear down” on his manual transmission SUV to try to stop. He insisted it was a “horrible” decision to drive knowing his brakes were broken. When pressed by the investigator that his version did not square with eyewitness reports, Gebben changed his story. He admitted he was going to go around the bus and was “aggravated” the bus was going slow. Geb-ben acknowledged he had come to a stop, “sat there,” then got “agitated” and drove around the bus. Later in the interview, Gebben again claimed — even though he was “mad” and “wanted to go around” — he “could have still stopped” if his brakes had been working properly.
¶ 8. At trial, the State offered a video recording taken from inside the bus on December 11, 2009. The video did not show Gebben’s Pathfinder striking Nathan. But it captured Gebben’s SUV coming to a complete stop behind the school bus. It also showed Gebben turn his tires turn to the left, then swing around the bus. The State also called multiple eyewitnesses to the incident.
¶ 9. Suresia Patrick, the bus driver, testified the bus’s red lights were on and its stop sign extended out when Gebben passed the bus and ran over Nathan. Patrick explained that Gebben’s vehicle “threw” Nathan. It “just went over [Nathan] and rolled him to the back. And [Gebben] kept going,” leaving Nathan lying on the roadside. Patrick did not see Gebben’s brake lights illuminated when he ran over Nathan. Kimberly Ridgeway, whose car was directly behind Gebben’s, testified she saw Gebben’s vehicle come to a complete stop both at the first stop and at the Key residence. She was certain the lights and stop sign on the bus were working properly. After Gebben’s Pathfinder had stopped for “probably two, three seconds,” Ridgeway saw Gebben’s tires turn to the left. “Shortly after that, [Gebben] went around” the bus. Ridgeway did not recall seeing Gebben’s brake lights after he ran over Nathan. Shaw, whose truck was directly behind Ridgeway’s car, also testified he saw Gebben’s vehicle come to a complete stop at the Key residence. He remembered Gebben’s vehicle was “turned cater-cornered ... kind of like [Gebben] was trying to pass” the bus. Shaw recalled “[a]fter the first child crossed the road the maroon Pathfinder just — all of a sudden you could hear the gas, you know, him accelerating, and he just went around ... the bus.” Shaw then saw Gebben’s vehicle strike Nathan “and there was tumbling up under.” And Gebben “kept going and ... didn’t stop. [He] didn’t try to slow down. [He] didn’t brake or anything.” Shaw added that he saw Gebben’s brake lights engage after Gebben had passed the bus and “was back in [his] *962 normal lane of traffic.” Jennifer Foster, whose car had just passed the school bus heading the opposite direction, saw Geb-ben’s Pathfinder strike Nathan through her rear-view mirror. Gebben’s vehicle “kind of pushed [Nathan] up towards under the mailbox.... And then [Gebben] proceeded to continue to drive on and run the child over.” She, too, did not recall seeing brake lights from Gebben’s vehicle. Foster got out of her car to help and saw a lady leaning over Nathan screaming his name. Foster described that blood was coming out of Nathan’s nose and ear, and there was a big pool of blood on the ground under his head.
¶ 10. The State called Dr. Adele Lewis, who had performed the autopsy on Nathan, as an expert witness in forensic pathology. Dr. Lewis testified the cause of Nathan’s death was injuries inflicted by a vehicle.
¶ 11. The jury convicted Gebben of culpable-negligence manslaughter and fleeing the scene of an accident. The circuit court sentenced him to twenty years’ imprisonment for manslaughter and two years for fleeing, to be served consecutively. On appeal, Gebben argues the circuit court erred by:
(1) denying his request for a change of venue;
(2) giving jury instruction S-5 on the elements of culpable-negligence manslaughter;
(8) refusing his proposed jury instructions defining “simple negligence” and “culpable negligence”;
(4) refusing his proposed jury instruction on the lesser non-included offense of unlawfully passing a school bus;
(5) denying his motion for a judgment a notwithstanding the verdict or, in the alternative, a new trial; and
(6)admitting photographs of the victim’s body into evidence.
DISCUSSION
I. Venue
¶ 12. Gebben argues the circuit court erred by denying his request for a change of venue. He claims that, due to media publicity and negative public sentiment in Jones County, he did not receive a fair trial by an impartial jury.
A. Relevant Facts
¶ 13. Almost three weeks prior to trial, Gebben filed a sworn application to transfer venue. Citing both “community attitudes” and “pretrial publicity in the local newspaper in Laurel, Mississippi,” Gebben argued he could not receive a fair trial in Jones County. He attached twenty-four articles published from December 12, 2009 to April 22, 2010.[1] The majority were from the Laurel Leader-Call. Others were published in either the Review of Jones County or on an NBC-affiliated Hattiesburg television station’s website. Some of the articles focused on Nathan’s death and Gebben’s apprehension. Others concerned Nathan’s family’s efforts to have the Mississippi Legislature increase the penalties for unlawfully passing a school bus.
¶ 14. Gebben points out: (1) there were several community memorials and gatherings by Nathan’s elementary school, the Jones County Sherriffs Department, and the Jones County Board of Supervisors; (2) the Jones County Board of Supervisors signed a proclamation declaring December “Nathan Key School Bus Safety Awareness Month”; (3) the Laurel Leader-Call deemed Nathan’s death the “Top Local News Story for 2009”; (4) a local public official, presumably referring to Gebben, *963 was quoted in the Laurel Leader-Call as saying: “Hopefully, there is a spot under the jail for him”; and (5) the district attorney explained in one article that he planned to charge Gebben with culpable-negligence manslaughter and felony fleeing because he did not want to “gamble” and thought those charges had the most “most solid footing, legally.”
¶ 15. Gebben supported his application for a change of venue with the affidavits of Ryan Rivers and Mike Rivers. Both purported to be residents of Jones County and claimed Gebben’s case had received extensive media coverage. They also asserted many Jones County residents had discussed the case. Ryan alleged “most people in Jones County believe that Mr. Geb-ben is guilty” and the public opinion of him is “very poor.” Mike claimed a “strong dislike and ill will against ... Gebben” existed in Jones County.
¶ 16. When Gebben’s trial counsel argued his motion for a change of venue, he failed to call any witnesses. The State called two witnesses. One witness, Bart Gavin, the Circuit Clerk of Jones County, had lived in the community for forty-four years. The other, Stan Pickering, was a twenty-seven-year resident of Jones County. As long-time residents, both witnesses purported to be familiar with the community. And according to both witnesses, despite local news coverage of the story, a fair and impartial jury could be impaneled in Jones County.[2]
B. Right to a Change of Venue
¶ 17. “The right to a fair trial by an impartial jury is fundamental and essential to our form of government. It is a right guaranteed by both the federal and state constitutions.” Simon v. State, 688 So.2d 791, 803 (Miss.1997) (quoting Johnson v. State, 476 So.2d 1195, 1209 (Miss.1985)). “The accused has a right to a change of venue when it is doubtful that an impartial jury can be obtained!).]” Id.
¶ 18. Mississippi Code Annotated section 99-15-35 (Rev. 2007) provides that a circuit court “may change the venue in any criminal case to a convenient county” if the defendant makes a “satisfactory showing ... that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed!).]” (Emphasis added). The application for a change of venue must be “in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation,” and it must be “supported by the affidavits of two or more credible persons]).]” Id. (emphasis added). If the defendant complies with the statute, “a presumption arises that an impartial jury [cannot] be obtained” in the county in question. Evans v. State, 725 So.2d 613, 647 (¶ 99) (Miss.1997). The State then has the burden to rebut this presumption. Gray v. State, 799 So.2d 53, 62 (¶37) (Miss.2001).[3]
¶ 19. In the criminal context, decisions concerning venue are left to the sound discretion of the trial judge. See, e.g., Winters v. State, 473 So.2d 452, 457 (Miss.1985). “[A] judgment of conviction will not be reversed on appeal on the ground that a change of venue was refused, unless it clearly appears that [the] *964 trial court abused its discretion.” Billiot v. State, 454 So.2d 445, 454 (Miss.1984).
C. Strict Compliance with Statute
¶ 20. The State argues Gebben did not strictly comply with section 99-15-35, because his two affiants were not credible. See Baldwin v. State, 732 So.2d 236, 241 (¶ 10) (Miss.1999) (“[A]n application for change of venue must conform strictly to the statute.”). It is undisputed that one of the attesting witnesses, Ryan Rivers, was a co-owner of the maroon Nissan Pathfinder Gebben had been driving when he struck and killed Nathan. The second attesting witness was Ryan’s father, Mike Rivers.
¶ 21. Black’s Law Dictionary defines a credible witness as “[a] witness whose testimony is believable.” Black’s Law Dictionary 1633 (8th ed. 2004). Webster’s Dictionary defines “credible” as “[c]apable of being believed; believable” or “[w]orthy of belief or confidence; trustworthy.” Random House Webster’s Unabridged Dictionary 473 (2d ed. 2001). While both attesting witnesses enjoyed some sort of relationship with either Gebben or each other, we do not find that they are not “credible persons” for purposes of section 99-15-35. Though the circuit judge was perhaps free to give diminished weight to Gebben’s attesting witnesses, we do not find Gebben failed to strictly comply with section 99-15-35.
D. Rebutting the Presumption of Prejudice
¶ 22. Assuming Gebben strictly complied with the statute and successfully raised the presumption of prejudice, we find the State rebutted the presumption. Gebben called no witnesses at the hearing on his motion to transfer venue. The State called two witnesses, who were both disinterested persons, unlike the arguably interested individuals who filed affidavits on Gebben’s behalf. And both of the State’s witnesses testified that in their opinions a fair and impartial jury could be impaneled in Jones County,
¶ 23. Further, “[a] presumption of prejudice may be rebutted by the State’s demonstration that an impartial jury was actually impaneled.” Evans, 725 So.2d at 648 (¶ 110). In evaluating the jury’s impartiality, “the linchpin is whether the venire members stated that they could be fair and impartial jurors if chosen.” Id. (quoting Simon, 688 So.2d at 804). The supreme court has held: “Where the record indicates the impaneled jury members affirmatively stated that they could fairly and impartially serve as jurorsf,] the State has rebutted the presumption of prejudice.” Gray v. State, 728 So.2d 36, 67 (¶ 153) (Miss.1998) (citing Simon, 688 So.2d at 804); see also Evans, 725 So.2d at 648 (¶ 110).
¶ 24. In denying Gebben’s motion to transfer venue, the circuit court found a fair and impartial jury could be seated in Jones County. The circuit judge noted that if it became apparent during voir dire that a fair and impartial jury could not be impaneled, he would dismiss the venire and “consider where we need to go from there.” At the outset of the voir dire, the circuit judge gave a rather lengthy explanation of the importance of juror impartiality:
But the question is as I ask you these questions and as the attorneys come forward and ask you certain questions, regardless of what you have heard or what you have been exposed to, the test is if you can take that and put it aside and listen to the facts and accept the statements of law that the Court will give you and make up your verdict from that and nothing else. If you have a preconceived notion about how this case should come out and you can’t put that aside, *965 then that shows that you have some bias. And if you have some bias then that might disqualify you from being a fair and impartial juror. So that’s the test we will be dealing with this morning as I ask you these questions.... Regardless of what you’ve heard or what you’ve read in the paper and on TV, the test is can you put that aside and be a fair and impartial juror and listen to the facts and the testimony of the case and accept the exhibits, whatever they might be, in the case and make up a verdict and deliberate with your fellow jurors and reach a verdict. If you can do that, you can be fair and impartial. If you can’t, then that may raise an issue.
After acknowledging that Gebben’s case had “been in the newspaper quite a bit and probably on television,” the circuit judge asked the jury:
How many of you that have read or heard something on television about this case can put that aside and be fair and impartial? Do any of you feel like you couldn’t put that aside and be fair and impartial? ... Today the facts will come from the witness stand based on witnesses or evidence and instructions of law that the Court will give you.... Can you put aside anything you read or anything you heard and listen to the facts of the case and be fair to both sides?
No panel member indicated that media coverage of the case would affect his or her ability to be impartial. Following the court’s voir dire, the prosecutor asked the panel: “Can each of you ... base the decision ... on the law that [the court] gives you and the evidence ... and not be influenced by whatever you [have] read or heard? Can each of you tell me you can do that?” No juror indicated that he or she could not. During defense counsel’s voir dire, he specifically questioned the jury panel whether they had read articles in the newspaper concerning Gebben’s case. Out of the twelve panel members who responded that they had, only three were ultimately seated on the jury. Those three jurors responded affirmatively when asked if they could put aside what they had read and impartially decide Gebben’s case based on the evidence presented at trial.
¶ 25. We are instructed by Gray, which involved somewhat similar circumstances. Gray, 728 So.2d at 63-67 (¶¶ 131-54). There, the “record before the Court clearly indicate[d] the [jury-]panel members were asked repeatedly by the trial judge, the State’s attorneys, and [defense counsel] if they could be fair and impartial.” Id. at 67 (¶ 153). The supreme court also pointed out: “There is nothing in the record to indicate that the jurors were not fair and impartial.” Id. Given these circumstances, the supreme court held: “Any presumption of prejudice was rebutted by the empaneling of the impartial jury in Gray’s case.” Id. We also find guidance from Evans, where the supreme court similarly found no abuse of discretion in the circuit judge’s denial of a change of venue.[4] Evans, 725 So.2d at 648 (¶ 110-11). The denial of a change of venue was upheld in large part because, “[b]ased on voir dire proceedings^] it appearfed] that an impartial jury was actually impaneled,” and “each juror indicated that they could be fair and impartial.” Id. at (¶ 110).
¶ 26. Just as in Gray, the transcript here shows the venire was asked numerous times during voir dire by the court, the State, and defense counsel if they could be fair and impartial. No one on the seated jury indicated at any point that he or she *966 could not be fair and impartial, because of media coverage or otherwise. We thus find the State rebutted any presumption of prejudice that may have existed.
E. Additional Arguments
¶27. Gebben argues prejudice on the venire was so apparent that reversal is required despite venire-member assurances to be fair and impartial. He cites the United States Supreme Court’s decision in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) as support. In Irvin, eight out of the twelve impaneled jurors expressed their opinions that the defendant was guilty, but assured the trial court they could be impartial. Id. at 727. The Supreme Court found “the pattern of deep and bitter prejudice shown to be present throughout the community was clearly reflected in the sum total of the voir dire examination^]” Id. (internal quotations omitted). Indeed, in Irvin “[t]wo-thirds of the jurors had an opinion that petitioner was guilty and were familiar with the material facts and circumstances involved, including the fact that other murders were attributed to him, some going so far as to say that it would take evidence to overcome their belief.” Id. at 728. Here, our facts differ drastically. No seated juror expressed an opinion that Gebben was guilty. Nor do we find where any venire member expressed such an opinion. So Irvin lends little support.
¶ 28. Gebben also suggests error occurred under Mississippi Rule of Evidence 404(b) because of juror exposure to newspaper articles prior to the jury selection. We find Gebben’s 404(b) argument unfounded but note that he makes no claim that any specific evidence of prior crimes, wrongs, or acts was mentioned in court in the jury’s presence or admitted into evidence.
¶ 29. Because the record reflects an impartial jury was impaneled, we find the circuit court remained within its discretion in denying Gebben a change of venue.
II. Jury Instructions on Culpable Negligence
¶ 30. Gebben’s second and third assignments of error, which we consider together, concern the circuit court’s: (1) giving the State’s jury instruction S-5, and (2) refusing his proposed instructions D-2 and D-14.
A. Standard of Review
¶ 31. A criminal defendant is entitled to jury instructions that present his theory of the case even if the supporting evidence “is weak, inconsistent, or of doubtful credibility.” Barnyard v. State, 47 So.3d 676, 682 (¶ 17) (Miss.2010) (quoting Ellis v. State, 778 So.2d 114, 118 (¶15) (Miss.2000)). But a defendant’s right to jury instructions presenting his theory of the case is not absolute. “[T]he court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Harris v. State, 861 So.2d 1003, 1012-13 (¶ 18) (Miss.2003) (quoting Austin v. State, 784 So.2d 186, 192(18) (Miss.2001)); see also Brown v. State, 39 So.3d 890, 898 (¶ 27) (Miss.2010). “[T]his Court reads the instructions together as a whole.” McKlemurry v. State, 947 So.2d 987, 990 (¶ 3) (Miss.Ct.App.2006). “No reversible error will be found to exist if, when read together, the instructions correctly state the law and effectuate no injustice.” Id.
B. Instructions Given on Culpable-Negligence Manslaughter
¶ 32. The State’s instruction S-5, given by the circuit court, instructed the jury on culpable-negligence manslaughter. Instruction S-5 reads as follows:
*967 The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt, that the defendant, Dominic L. Gebben:
1. Passed a stopped school bus, and
2. That he knew, or should have known by the exercise of ordinary care that the school bus was letting off children to go to their homes, and
8. That his passing said school bus was a decision chosen/or made by the defendant and not caused by circumstances beyond his control, and
4. That at the time the defendant passed said bus, he knew that his braking system was not functioning properly, and
5. That as [a] direct and proximate result of the above actions of the defendant, Nathan Key was killed, and
6. That the above actions of the defendant was [sic] such that under the circumstances then and there existing evidences a wanton and reckless and willful disregard for human life, and the conscious and wanton and reckless disregard of the probabilities of fatal consequences to others as a direct result of the willful creation of an unreasonable risk thereof;
then the defendant, Dominic L. Gebben, is guilty of Manslaughter by culpable negligence[,] and it is your sworn duty to so find.
This instruction must be read in conjunction with other instructions given on the elements of culpable-negligence manslaughter — instructions S-l and S-3. Instruction S-l provides:
DOMINIC L. GEBBEN has been charged in Count I with the offense of Manslaughter by culpable negligence.
If you find from the evidence in this case beyond a reasonable doubt that:
1. On or about the 11th day of December, 2009, in the Second Judicial District of Jones County, Mississippi;
2. That Nathan Key was a human being; and
3. That Dominic L. Gebben without authority of law and without malice did kill Nathan Key by his culpable negligence;
then you shall find the defendant, Dominic L. Gebben, guilty of Manslaughter as charged in Count I.
If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Dominic L. Gebben not guilty of Manslaughter as charged in Count I.
Instruction S-3 states:
The Court instructs the Jury that criminal or culpable negligence in the operation of an automobile sufficient to warrant a conviction of manslaughter is such gross negligence which under the circumstances then and there existing evidences a wanton and reckless and willful disregard for human life, and the conscious and wanton and reckless disregard of the probabilities of fatal consequences to others as a direct result of the willful creation of an unreasonable risk thereof; and if you believe from all the evidence in this case beyond a reasonable doubt that at the time and place complained of, the Defendant, Dominic L. Gebben, was then and there guilty of such culpable negligence, and that, as a direct result thereof, the said, Nathan Key, was killed, then the Defendant, Dominic L. Gebben, is guilty as charged in the indictment and the Jury should so find.
*968 C. Gebben’s Arguments

1. Jury Instructions on Proximate Cause

¶ 38. Gebben contends the jury instructions on the elements of manslaughter were improper because the instructions allowed the jury to consider whether faulty brakes were the proximate cause of the accident. Claiming “[t]he State offered no evidence that [Gebben’s vehicle’s allegedly] faulty brakes had any causal relationship to the underlying incident,” Gebben suggests the instructions lacked an evidentia-ry basis. We disagree. Though he equivocated, Gebben at several times told law enforcement that faulty brakes caused the accident. At one point, he claimed in a videotaped interview admitted into evidence that he had made a “horrible decision” to drive his truck knowing the brakes were broken. And even though he was aggravated and wanted to go around the bus, he “could have still stopped” had his brakes functioned properly.
¶ 84. “The statutory elements of culpable-negligence manslaughter are ‘an unlawful killing by the culpable negligence of another.’ ” Williams v. State, 31 So.3d 69, 79 (¶ 31) (Miss.Ct.App.2010) (quoting Ramage v. State, 914 So.2d 274, 276 (¶ 5) (Miss.Ct.App.2005)). See Miss.Code Ann. § 97-3^17 (Rev.2006). The causation element is present in this definition — the unlawful killing must be a result of the defendant’s culpable negligence.
¶35. Contrary to Gebben’s suggestion, we find the jury was properly instructed that Gebben’s culpable negligence in some form must have caused Nathan Key’s death. Instruction S-3 required the jury to find that “as a direct result” of Gebben’s culpable negligence, Nathan Key[ ] was killed.” S-l instructed the jury that it must find Gebben “did kill Nathan Key by his culpable negligence.” Finally, S-5 provided that the jury must find “as [a] direct and proximate result of the above actions of the defendant, Nathan Key was killed[.]” Reading S-5 in conjunction with S-3 and S-l resolves any ambiguity. Taking the instructions together, we find it evident the jury was properly instructed that to return a guilty verdict on count one, it had to find Geb-ben’s culpable negligence caused Nathan’s death.

2. Instructions D-2 and D-1I

¶ 36. Gebben further contends the circuit court erred by refusing two of his instructions, D-2 and D-14, which would have explained the distinction between “simple negligence” and “culpable negligence.” However, this court has previously rejected Gebben’s exact argument. Hudson v. State, 45 So.3d 1193, 1196 (¶ 12) (Miss.Ct.App.2009) (citing Robinson v. State, 571 So.2d 275, 277 (Miss.1990)). In Hudson, we held that where the jury is properly instructed on the definition of culpable negligence, it is not error for the trial court to refuse an instruction that distinguishes between civil negligence and criminal culpable negligence. Id. The jury was properly instructed on culpable negligence; thus we find no error on this issue.
III. Lesser Non-included Offense Jury Instruction
¶ 37. Gebben contends the circuit court erred by refusing his proposed instruction, D-6A, on the misdemeanor offense of unlawfully passing a school bus. At the time of his trial, this traffic violation carried a $200 to $500 fine and up to one-year imprisonment, or both. Miss.Code Ann. § 63-3-615(2) (Rev. 2004).
A. Lesser Non-included Offenses
¶ 38. It has long been recognized at common law that in criminal prosecutions, a defendant is entitled to a jury *969 instruction for an offense of lesser severity that is “included” in the principal charge. Beck v. Alabama, 447 U.S. 625, 683, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (citations omitted). A lesser offense is deemed “included” in a more serious offense if the more serious offense includes all elements of the lesser offense, and it is thus impossible to commit the greater -without also committing the lesser. Odom v. State, 767 So.2d 242, 246 (¶ 11) (Miss.Ct.App.2000). In Mississippi, a criminal defendant’s right to a lesser-included-offense instruction is established by statute. See Miss.Code Ann. § 99-19-5 (Rev. 2007) (authorizing the jury to find a defendant “guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment[.]”) (Emphasis added).
¶ 39. A more recent development is the concept that a defendant may be entitled to a jury instruction on an uncharged offense that is not included in the principal charge. Lesser-Related Offenses, 50 A.L.R.4th 1081 § 2[a], at 1088 (1986). The acceptance of so-called “lesser wm-includ-ed offense instructions,” sometimes referred to as “lesser-related instructions” has been entirely limited to state courts. Id. Indeed, the Federal Rules of Criminal Procedure limit the defendant’s entitlement to instructions on only those lesser offenses “necessarily included” in the offense charged. Fed.R.Crim.P. 31(c). See also Schmuck v. United States, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (adopting a stringent “elements test” for interpreting Rule 31(c)).
¶ 40. The overwhelming majority of states hold that it is improper to instruct the jury on an offense that, although related to the principal offense charged, is not included in the principal offense. See, e.g., Hooper v. State, 448 So.2d 501, 502 (Ala.Crim.App.1984); State v. Ennis, 142 Ariz. 311, 689 P.2d 570, 573 (1984); People v. Birks, 19 Cal.4th 108, 77 Cal.Rptr.2d 848, 960 P.2d 1073, 1074 (1998); State v. Vitale, 197 Conn. 396, 497 A.2d 956, 963 (1985); Green v. State, 459 So.2d 351, 352 (Fla.Ct.App.1984); Dickson v. State, 167 Ga.App. 685, 307 S.E.2d 267, 268 (1983); State v. Curtis, 130 Idaho 522, 944 P.2d 119, 120-22 (1997); People v. Thompson, 55 Ill.App.3d 795, 13 Ill.Dec. 609, 371 N.E.2d 326, 328 (1977); Anglin v. State, 490 N.E.2d 721, 723 (Ind.1986); State v. Massick, 511 N.W.2d 384, 387-88 (Iowa 1994); State v. Arnold, 223 Kan. 715, 576 P.2d 651, 652 (1978); Houston v. Com., 975 S.W.2d 925, 929 (Ky.1998); State v. Dixon, 471 So.2d 282, 285 (La.Ct.App.1985); State v. Angulo, 471 N.W.2d 570, 573 (Minn.Ct.App.1991); State v. Laws, 661 S.W.2d 526, 530-31 (1983); State v. Beavers, 296 Mont. 340, 987 P.2d 371, 378 (1999); State v. Miller, 215 Neb. 145, 337 N.W.2d 424, 426 (1983); People v. McGee, 161 A.D.2d 1034, 1035, 557 N.Y.S.2d 601 (N.Y.App.Div.1990); State v. Bates, 70 N.C.App. 477, 319 S.E.2d 683, 685 (1984); State v. Boone, 119 N.H. 594, 406 A.2d 113, 114-15 (1979); Shrum v. State, 991 P.2d 1032, 1034-35 (Okla.Crim.App.1999); State v. Bowen, 340 Or. 487, 135 P.3d 272, 289 (2006); State v. Moss, 754 N.W.2d 626, 634 (S.D.2008); State v. Russo, 177 Vt. 394, 864 A.2d 655, 663 (2004); State v. Harris, 121 Wash.2d 317, 849 P.2d 1216, 1218 (1993); State v. Wade, 200 W.Va. 637, 490 S.E.2d 724, 734 (1997); State v. Martin, 156 Wis.2d 399, 456 N.W.2d 892, 894-95 (1990); State v. Keffer, 860 P.2d 1118, 1134 (Wyo.1993).
¶41. And the United States Supreme Court has rejected the notion that defendants are entitled to lesser non-included instructions under the U.S. Constitution. Hopkins v. Reeves, 524 U.S. 88, 96-97, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998) (specifically declining to establish a judicially created right to lesser non-included offense instructions).
*970 ¶ 42. Yet Mississippi is one of the small minority of states that requires the giving of lesser non-included offense instructions. See id. at 96 (“Almost all States ... provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime.”). The right to lesser non-included instructions in Mississippi is neither grounded in our state’s constitution nor its statutes or longstanding precedent. Rather, it was created by the Mississippi Supreme Court in 1988 in Griffin v. State, 533 So.2d 444 (Miss.1988). There, the supreme court found an instruction on simple assault was required in a prosecution for rape. The court stated:
Whether simple assault is formally a lesser included offense to rape is not the point.... The facts suggest that [the defendant] may have been guilty of at least two possible courses of criminal conduct: rape and simple assault, the latter carrying a maximum penalty far less than the former. As the jury may on these facts reasonably have found [the defendant] guilty of simple assault but not guilty of rape — without any inconsistency in evidentiary or ultimate findings, it follows that [he] was of right entitled to have the jury instructed on the lesser offense of simple assault.
Griffin, 533 So.2d at 447-48; see Green v. State, 884 So.2d 733, 737 (¶ 12) (Miss.2004) (recognizing Griffin as “the seminal case on lesser non-included offense instructions”). The supreme court has since reaffirmed its adherence to this minority view. See, e.g., Williams v. State, 53 So.3d 734, 740-46 (¶¶ 30-48) (Miss.2010) (reversing conviction of murder because it was error to refuse instruction on assisted suicide); Green v. State, 884 So.2d 733, 737-38 (¶¶ 13-16) (Miss.2004) (reversing conviction of sale of cocaine because it was error to refuse instruction on sale of a substance falsely represented as cocaine); Richardson v. State, 767 So.2d 195, 201 (¶ 32) (Miss.2000) (reversing conviction of capital rape because it was error to refuse instruction on lustful touching of a child); Murrell v. State, 655 So.2d 881, 885-86 (Miss.1995) (reversing conviction of simple assault on a police officer because it was error to refuse instruction on resisting arrest).
¶ 43. Under Mississippi’s approach, a defendant is generally entitled to an instruction on an offense lesser in severity than the principal charge, so long as the lesser offense (1) arises from the same operative facts as the greater offense and (2) has an evidentiary basis. Moore v. State, 799 So.2d 89, 91(7) (Miss.2001). As to the second prong, the same analysis for lesser-included offenses applies. Brady v. State, 722 So.2d 151, 160-61 (¶ 38) (Miss.Ct.App.1998). Under this standard, the trial court must grant the instruction if— viewing the evidence in the light most favorable to the accused — a reasonable jury could find the defendant guilty of the lesser offense but not guilty of the greater offense. Id.[5] While either the State or the defendant may request a lesser included offense instruction, only the defendant may request a lesser non-included instruction. Gause v. State, 65 So.3d 295, 300 (¶ 14) (Miss.2011).
*971 ¶44. Several members of this court have expressed concerns with Mississippi’s approach to lesser non-included offenses.[6] However, we see no need to rehash these concerns at length. As an error-correction court, duty bound to follow decisions of our state’s highest court, we apply the doctrine of lesser non-included offenses established by its binding precedent.
B. Procedural Issues
¶45. In the proceedings below, neither the State nor the circuit judge recognized the legal issue presented concerned a potential lesser non-included offense. The State argued “unlawful overtaking of a school bus ... is not a lesser included offense of culpable negligence manslaughter.... [Gebben is] either guilty of manslaughter or nothing. We couldn’t convict him under that indictment of this.” Though not entirely clear, the circuit judge seemingly agreed with this argument in refusing Gebben’s proposed instruction D-6A on unlawfully passing a school bus.
¶ 46. Nevertheless, because Gebben claimed he was “entitled to have his theory of the case put forth in the form of an instruction” and tendered an instruction on the misdemeanor traffic violation, we find he has preserved the issue. See Rubenstein v. State, 941 So.2d 735, 789 (¶ 247) (Miss.2006). Thus, we address the merits of his challenge to the denial of instruction D-6A.
C. Denial of the Instruction
¶ 47. In Sheffield, we recently explained the criteria for granting a lesser non-included offense instruction:
In reviewing the qualifying factors, we first ask whether the lesser offense arose from the same operative facts. If not, the inquiry ends here. Second, there must be an evidentiary basis in the record for the instruction. The standard for determining whether an eviden-tiary basis exists is the same for a lesser non-included offense as it is for a lesser included offense. The trial court should grant the instruction unless it can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser non-included offense (and conversely not guilty of at least one element of the principal charge).
Sheffield v. State, 64 So.3d 529, 533(13) (Miss.Ct.App.2011) (emphasis added and quotations and citations omitted).[7]
*972 ¶48. There is no dispute Geb-ben’s proposed charge of unlawfully passing a school bus is not a lesser included offense of culpable-negligence manslaughter. The two offenses have no overlapping elements. Culpable-negligence manslaughter is “an unlawful killing by the culpable negligence of another.” Williams, 31 So.3d at 79 (¶ 31) (quoting Ramage, 914 So.2d at 276 (¶ 5)). See Miss. Code Ann. § 97-3-47. And the statute prohibiting passing a school bus, at the time of Gebben’s trial, provided:
(1) The driver of a vehicle upon a street or highway upon meeting or overtaking any school bus which has stopped on the street or highway for the purpose of receiving or discharging any school children shall come to a complete stop and shall not proceed until the children have crossed the street or highway and the school bus has proceeded in the direction it was going.
Miss.Code Ann. § 63-3-615(1) (Rev. 2004).[8] In short, the elements of the two offenses do not resemble each other. However, the requested instruction on the traffic regulation tracked section 63-3-615(1), concerned the same operative facts underlying Gebben’s manslaughter charge, and was supported by the evidence. So in light of the denial of instruction D-6A, we must consider whether the jury could have reasonably found Gebben guilty of this traffic offense but at the same time acquitted him of culpable-negligence manslaughter. Viewing the evidence in a light most favorable to Gebben, and according him thé benefit of all reasonable inferences, we find from the evidence before us that no reasonable jury could have found Gebben guilty of only the misdemeanor violation of passing a school bus and not culpable-negligence manslaughter. Thus, we find no reversible error in the circuit court’s refusal of an instruction on the lesser traffic regulation.
¶ 49. In reaching this decision, we find the supreme court’s reasoning in Delashmit v. State instructive. Delashmit v. State, 991 So.2d 1215, 1221-22 (¶¶ 18-20) (Miss.2008). In that case, an eight-year-old girl testified Joseph Delashmit “offered her fifty dollars and had exposed his ‘middle spot’ to her.” Id. at (¶ 19). And De-lashmit admitted offering the girl money for sex and exposing his penis to her. Id. Delashmit was charged with enticing a child for sexual purposes. At trial, the circuit judge denied his specific request for a jury instruction on the lesser non-included misdemeanor offense of indecent exposure. The requested lesser-offense instruction was based on Mississippi Code Annotated section 97-29-31 (Rev. 2006), which criminalizes the willful and lewd exposure of one’s private parts in any place where others are present. The jury convicted Delashmit on the enticing a minor charge. And on appeal, Delashmit argued the trial court committed reversible error by denying his lesser non-included offense instruction. Even though an indecent exposure clearly arose from the operative facts of the charged offense and was supported by the evidence, the supreme court found Delashmit was not entitled to instruct the jury on the lesser non-included offense. Delashmit, 991 So.2d at 1222 (¶ 19). Instead, the supreme court affirmed Delashmit’s conviction, finding that “[b]ased on the overwhelming evidence, no reasonable jury could have found Delashmit not guilty of any element of the principal charge.” Id.
*973 ¶ 50. This court has previously held that a defendant’s acts of running a red light and striking a van — killing the driver — then fleeing and hiding under a car, demonstrated a wanton disregard for the safety of human life, supporting a culpable-negligence-manslaughter conviction. Montgomery v. State, 910 So.2d 1169, 1173-74 (¶¶ 16-17) (Miss.Ct.App.2005). And the supreme court has found a culpable-negligence-manslaughter conviction was justified where a motorist struck a seven-year-old child, who was disembarking from a school bus. Jones v. State, 35 So.2d 706, 706 (Miss.1948).
¶ 51. Here, it is undisputed that, before Gebben passed the school bus and fatally struck the young child, the bus’s red warning lights and stop signs were activated and children were exiting. Furthermore, Gebben, who had been driving behind the school bus, had stopped behind the school bus as it was unloading other children just moments earlier, thirty yards from the Key residence. During this prior stop the bus had similarly employed its warning devices before unloading children. And as the bus crept slowly forward from the first stop to the Key house, its yellow caution lights remained activated, until it turned on its red lights and extended its stop sign to unload the Key children. The video from the bus shows Gebben come to a stop behind the bus, then turn his SUV to the left and accelerate past the bus. It is uncontested that, after Gebben drove around the school bus and hit Nathan with his SUV, Gebben did not stop. Instead, he drove his vehicle over the child’s body, then fled the scene and abandoned his SUV in some nearby woods. Drawing from Delashmit and viewing this uncontested evidence in a light most favorable to Gebben — accepting either Gebben’s equivocal claims to law enforcement officers that he should not have been driving that day because he knew his breaks were faulty or his contrary admissions to investigators that he was aggravated the bus was going slow and wanted to go around it — we find the jury could not have reasonably found Gebben’s actions did not evince a wanton or reckless disregard for the safety of human life.
D. Harmless Error
¶ 52. Though we find no error in the denial of instruction D-6A, we also note the Mississippi Supreme Court has rejected the notion that a trial court’s improper refusal of a lesser non-included instruction always mandates reversal. Recently in Williams, the supreme court explained: “We recognize that a trial judge’s error in failing to give a jury instruction often will be deemed harmless based on the totality of the reeord[.]” Williams, 53 So.3d at 746 (¶48). To find the refusal of the misdemeanor traffic instruction warrants reversal would be akin to requiring reversal of a jury’s verdict in a manslaughter case based on the denial of an instruction on illegally discharging a firearm,[9] where undisputed facts establish a passion-based shooting on a public street. Or perhaps a more relevant example would be mandating reversal of a culpable-negligence-manslaughter conviction based on the failure to give an instruction on the misdemean- or offense of circumventing a barricade,[10] where the totality of undisputed facts show a motorist’s gross disregard for the safety of life by driving around a barricade, striking and killing a road worker, and then fleeing. This case and these examples showcase why the United States Supreme Court has pointedly criti *974 cized requiring lesser non-included instructions as “not only unprecedented, but also unworkable” and has observed this scheme “can hardly be said to be a rehable result,” as it “detracts from, rather than enhances, the rationality of the process.” Hopkins, 524 U.S. at 96-97, 118 S.Ct. 1895.
¶ 53. Considering Gebben’s case, the totality of the record shows that numerous eye witnesses gave highly corroborative testimony describing Gebben’s willful and intentional act of pulling into the opposite lane and passing a stopped school bus. It is uncontested the bus had activated its warning devices and was in the process of unloading children when Gebben fatally struck Nathan, ran over him, then fled. These acts overwhelmingly show a grossly reckless disregard for the safety of human life. Thus, even if the circuit court improperly denied Gebben’s instruction on unlawfully passing a school bus, we find the refusal harmless based on the entirety of the record.
IV. Sufficiency and Weight of the Evidence
¶ 54. Gebben next challenges the sufficiency and weight of the evidence supporting the jury’s verdict, but only with respect to the manslaughter charge.
A. Standard of Review
¶ 55. When addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). Credible evidence consistent with guilt must be accepted as true, and the State receives the benefit of all favorable inferences reasonably drawn from the evidence. Jones v. State, 20 So.3d 57, 64 (¶ 16) (Miss.Ct.App.2009) (quoting Hughes v. State, 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008)). The jury resolves matters of weight and credibility. Reversal is proper when reasonable and fair-minded jurors could only find the accused not guilty. Id. Our primary duty in considering the sufficiency of the evidence is to determine whether from the evidence presented, it would be impossible for a reasonable juror to find the defendant guilty. Ducksworth v. State, 767 So.2d 296, 301 (¶ 10) (Miss.Ct.App.2000).
¶ 56. The standard differs slightly when reviewing a claim based on the weight of the evidence, challenging a trial court’s denial of a motion for a new trial. Under this standard, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). We evaluate the evidence in the light most favorable to the verdict. Id. And we are required to accept as true all evidence consistent with the defendant’s guilt, along with any reasonable inferences that might be drawn from the evidence. Young v. State, 891 So.2d 813, 821 (¶ 21) (Miss.2005). “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18).
B. Sufficiency and Weight— Manslaughter Verdict
¶ 57. Gebben was convicted of manslaughter under Mississippi Code Annotated section 97-3-47, which provides: “Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.” To sustain a conviction for culpable-negligence manslaughter, the State must prove beyond a reasonable doubt “an unlawful killing by the culpable negligence of another.” Williams, 31 So.3d at 79 (¶ 31) (quoting Ramage, 914 So.2d at 276 (¶5)). As the jury in this *975 case was instructed, culpable negligence is defined as “the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof.” Chandler v. State, 946 So.2d 355, 361 (¶ 22) (Miss.2006). The supreme court has also defined culpable negligence as “such gross negligence as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness.” Id. (quoting Shumpert v. State, 935 So.2d 962, 967(14) (Miss.2006)).
¶ 58. Gebben acknowledges that the facts of this case are largely undisputed. He does not contest that he unlawfully passed a school bus or that the victim died as a result. His argument, instead, is that reasonable jurors could only have found he committed ordinary negligence — not culpable negligence. We disagree. Viewing the evidence in a light most favorable to the State, we find the jury could have reasonably concluded that Gebben acted with a reckless indifference to the value of human life and that his conduct was tantamount to wilfulness.
¶ 59. We find instructive our decision in Montgomery, in which we unanimously affirmed a culpable-negligence-manslaughter conviction where the defendant drove through a red light and collided with another car, resulting in a fatality, then fled the scene of the accident and hid under a car in an attempt to evade police. Montgomery, 910 So.2d at 1174 (¶ 17). This court found the evidence “sufficient to demonstrate a wanton disregard for the safety of human life.” Id. at 1174 (¶ 17). We are also guided by the Mississippi Supreme Court’s decision in Goldman. There, a unanimous supreme court similarly upheld a culpable-negligence-manslaughter conviction where the defendant, driving on a two-lane highway, negligently drove his vehicle across a solid yellow line, causing the vehicle coming the opposite direction to run off the road and resulting in the driver’s death. Goldman v. State, 406 So.2d 816, 817-20 (Miss.1981).
¶ 60. The several decisions by the Mississippi Supreme Court cited by Gebben are distinguishable. In Gant v. State, 244 So.2d 18, 20-21 (Miss.1971), the supreme court found the State offered insufficient evidence of the defendant driver’s intoxication from drinking alcohol — the basis relied on by the State to support the culpable-negligence-manslaughter conviction. In Evans v. State, 562 So.2d 91 (Miss.1990) — another case involving culpable-negligence manslaughter where the supreme court reversed due to insufficient evidence — the only two eyewitnesses testified the defendant “was driving well, and not recklessly, negligently, unlawfully, or at a high rate of speed.” Id. at 96. In contrast, here the testimony of multiple eyewitnesses supports, as does either of Gebben’s conflicting versions, that he acted with reckless indifference to the value of human life. Finally, our facts are dramatically different from Goudy v. State, 203 Miss. 366, 35 So.2d 308 (1948), in which the supreme court reversed a culpable-negligence-manslaughter conviction where the defendant’s truck fatally struck a child who “darted out” onto an isolated dirt road as defendant’s vehicle passed a wagon.
¶ 61. We have no difficulty concluding the evidence is sufficient to support the verdict. Nor do we find this to be an exceptional case where allowing the verdict to stand would sanction an unconscionable injustice.
Y. Photographs
¶ 62. Gebben finally argues the circuit court erred by admitting, over his *976 objection, certain close-up photographs of Nathan’s external injuries. He contends the photographs were prejudicial and cumulative of testimony as to Nathan’s cause of death.
¶ 63. We review a trial court’s admission of photographs for an abuse of discretion. Dampier v. State, 973 So.2d 221, 230 (¶ 25) (Miss.2008). “The discretion of the trial judge is almost unlimited regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Id. (internal quotations omitted). “So long as a photograph has probative value and its introduction serves a meaningful evidentiary purpose, it may still be admissible despite being gruesome, grisly, unpleasant, or even inflammatory.” Id. (internal quotations omitted). “A photograph has a meaningful evidentiary purpose when it: (1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.” Chamberlin v. State, 989 So.2d 320, 340 (¶ 73) (Miss.2008). “Some probative value is the only requirement needed in order to support a trial judge’s decision to admit photographs into evidence.” Id. [11]
¶ 64. Mississippi Rule of Evidence 401, which defines relevant evidence,[12] favors admission “[i]f the evidence has any probative value at all[.]” M.R.E. 401 cmt. Mississippi Rule of Evidence 403 allows relevant evidence to “be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” (Emphasis added).
¶ 65. Gebben claims admission of the photographs of the victim was error because “[i]t was undisputed by both sides that the manner of death was Gebben’s vehicle.” But the Mississippi Supreme Court has found the mere fact that the manner of a victim’s death is undisputed does not necessarily negate the probative value of a photograph of the victim’s body. Spann v. State, 771 So.2d 883, 895 (¶ 31) (Miss.2000) (citing Miller v. State, 740 So.2d 858, 865 (Miss.1999)). The inquiry is whether the photographs have a meaningful evidentiary purpose.
¶ 66. The State offered two close-up photographs of Nathan’s injuries during the testimony of Dr. Lewis, who performed the autopsy, to show “tire marks on the child where he was run over.” Dr. Lewis testified the “patterned abrasion” depicted in the photographs was consistent “with a tire, tire treads.” Like the photographs in Spann, we find the photos showing Nathan’s skin abrasions are “unpleasant” but have probative value. Id. at (¶ 32). Though it was undisputed that Gebben ran over Nathan, these photographs aided in describing the circumstances of Nathan’s death — showing that Gebben’s tires rolled directly over Nathan’s body. They supplemented Dr. Lewis’s testimony that Nathan’s cause of death was injuries inflicted by a vehicle— the only testimony directly on this point at *977 Gebben’s trial. Because the photographs are neither cumulative nor unfairly prejudicial, we find the circuit court remained within its discretion in admitting the photographs.
¶ 67. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CULPABLE-NEGLIGENCE MANSLAUGHTER, AND COUNT II, FLEEING THE SCENE OF AN ACCIDENT, AND SENTENCE OF TWENTY YEARS FOR COUNT I AND TWO YEARS FOR COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR.

. Gebben’s trial was held on June 7-8, 2010.

. Gavin testified there had been other high profile cases drawing media attention that had resulted in acquittals.

. We note that the Mississippi Supreme Court has indicated that in some cases the presumption is irrebuttable. Evans, 725 So.2d at 647 (¶ 100). None of the factors implicating an irrebuttable presumption are present here.

. We note that venue in Evans had been transferred once, and the supreme court was reviewing the denial of a second change of venue. See Evans, 725 So.2d at 646(95).

. The trial court should grant the instruction unless it can say:
taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser [non-]included offense (and conversely not guilty of at least one element of the principal charge).
Brady, 722 So.2d at 161(38) (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)).

. See Barber v. State, 743 So.2d 1054, 1059 (¶ 19) (Miss.Ct.App.1999) (Southwick, P.J., dissenting) (“An accused should not have the unrestricted right to search the statute books for some other related but not lesser-included offense with a lesser punishment, and insist upon an instruction on that crime."); see also Williams v. State, 53 So.3d 761, 792 (Miss.Ct.App.2009) (Roberts, J., dissenting) ("[I]n the context of a prosecution of a felony, the entitlement to a lesser non-included offense instruction is contrary to Article 3, Section 27 of the Mississippi Constitution of 1890,” which requires indictment by a grand jury absent a sworn waiver.), rev’d, 53 So.3d 734 (Miss.2010); Brooks v. State, 18 So.3d 859, 876 (¶ 50) (Miss.Ct.App.2008) (Carlton, J., dissenting) (“The current case exemplifies what the United States Supreme Court projected as unworkable jurisprudence lacking constitutional and statutory legs.”), rev’d in part, 18 So.3d 833 (Miss.2009); McDonald v. State, 784 So.2d 261, 266 (¶ 20) (Miss.Ct.App.2001) (Southwick, J., concurring) (“In effect an accused can indict himself for an offense that is not within the actual indictment but is potentially within the facts and carries a lesser sentence.”).

. While under this standard an accused may be convicted of a "non-included” offense for which he was not indicted, the supreme court has held that the defendant waives any notice-based concerns by requesting an instruction on the non-included offense. Griffin, 533 So.2d at 448 n. 2.

. Section 63-3-615(1) was subsequently amended, effective July 1, 2011. See Miss. Code Ann. § 63-3-615(1) (Supp.2011).

. See Miss.Code Ann. § 97-15-13 (Supp. 2011).

. See Miss.Code Ann. § 63-3-321 (Rev. 2004).

. We note that the supreme court in Chamberlin recognized McNeal v. State, 551 So.2d 151 (Miss.1989) as the "solitary instance where [the supreme court] held a photograph, a close-up of the victim’s partly decomposed skull, was gruesome and lacked an evidentia-ry purpose and was more prejudicial than probative[J” Chamberlin, 989 So.2d at 340 (¶ 73).

. The definition of relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401.